[Civ. Nos. 16215, 16471. Second Dist., Div. Two. Nov. 17, 1948.]

WINIFRED W. CAMERON, Respondent, v. ADRIAN E. CAMERON, Appellant.

Meserve, Mumper & Hughes, Loeb & Loeb, Hewlings Mumper and Herman F. Selvin for Appellant.

Combs, McIntyre & Scales, Mitchell, Silberberg & Knupp and Peery Price for Respondent.

WILSON, J.—The only question necessary to be decided in this case is whether the judgment setting aside, on the grounds of fraud and misrepresentation, the property settlement agreement entered into between plaintiff and defendant is sustained by the evidence.

Plaintiff and defendant married in January, 1923, and separated in May, 1941. After separation the parties began negotiations through their respective attorneys for a property settlement. For a short time plaintiff had as her attorney Mr. John G. Clock of the firm of Clock, Waestman and Clock. After he was discharged by plaintiff she employed Messrs. Joseph Fainer and Russell Parsons who represented her until the agreement was signed and an interlocutory decree of divorce granted to her. On June 30, 1941, she filed an action

against defendant for separate maintenance. He filed an answer to the complaint and at the same time filed a cross-complaint for divorce. The cause was set for trial as a contested case and was assigned to a trial department on February 16, 1942. Before the trial was commenced the parties signed a property settlement agreement in the courtroom. By stipulation and with the permission of the court plaintiff amended her complaint to ask for a divorce. The cause was thereupon tried upon the evidence of plaintiff and her witnesses, defendant offering no defense. The interlocutory decree of divorce was signed, filed and entered on February 16, 1942, and the final decree was filed and entered on February 18, 1943. The pleadings did not ask that the property settlement agreement be approved by the court and it was not approved by either the interlocutory or the final decree.

On February 27, 1946, the complaint in the instant action was filed to set aside the property settlement agreement on the ground of alleged fraud and misrepresentation of defendant in that he had represented to plaintiff that all his property, particularly mentioning his interest in the Motor Rim and Wheel Service, was his separate property and that plaintiff had no interest therein, and that the value of his interest in the partnership doing business under that name was much less than it was actually worth.

Upon a trial without a jury the court made findings in favor of plaintiff and entered an interlocutory decree setting aside the property settlement agreement, declaring the same to be void and of no effect, and appointing a referee to take an accounting between the parties and to report his findings to the court. Defendant, being uncertain as to whether or not the interlocutory decree might be construed as final in some of its aspects, appealed therefrom. Upon the report of the referee a final judgment was entered adopting and reaffirming the interlocutory decree and awarding to plaintiff the amount which the court found to be her share of the community property. From the final decree defendant also appealed.

The evidence does not warrant the findings and judgment. Prior to the marriage of plaintiff and defendant the latter had inherited property from his deceased father. In June, 1925, defendant and one Weslie D. Smith entered into a partnership under the name of "Motor Rim and Wheel Service of California," each owning a half interest. Defendant's investment consisted of the proceeds of a part of his inheritance. The business prospered and each of the partners annually withdrew

a considerable amount from the earnings of the partnership. Defendant's withdrawals were used for the support of his family, consisting of plaintiff and the adopted daughter of the parties, and for other purposes. Such withdrawals were charged on the company's books as salary and were reported on the income tax returns of plaintiff and defendant as community property, one-half being apportioned to each party. The balance of defendant's share of the earnings above that which was stated to be salary was reported by defendant as his separate property.

At the time of the separation of the parties and at all times during the negotiations for their property settlement defendant took the positive and unqualified position that his interest in the Motor Rim and Wheel Service, together with other property, was his separate property.

In plaintiff's complaint for separate maintenance she alleged among other things that plaintiff and defendant were possessed of certain community property consisting of money, stocks and bonds and a one-half interest in the Motor Rim and Wheel Service. Defendant's answer admitted that the parties were possessed of community property consisting of money, stocks and bonds, but specifically denied that his interest in the Motor Rim and Wheel Service was community property and affirmatively alleged that it was his sole and separate property. He made a like allegation in his cross-complaint for divorce filed simultaneously with his answer, and added that all his contributions to the business were derived from the sale of securities inherited by him from his deceased father. In plaintiff's answer to the cross-complaint she denied these allegations and affirmatively alleged the community nature of the property. At the time of filing her complaint plaintiff filed a questionnaire in which she stated that defendant's one-half interest in Motor Rim and Wheel Service was community property. Defendant in his questionnaire, which plaintiff's counsel received, asserted it was his separate property.

During the negotiations for the property settlement agreement plaintiff and defendant had no direct communication with each other, all conversations and correspondence having been conducted through their attorneys. There was no discussion at any time between plaintiff and the attorneys representing defendant, and she had no conversation with her husband for about six months before the agreement was signed. While Mr. Clock was representing plaintiff she told him what she knew about her husband's properties and said that defend-

ant claimed his interest in Motor Rim and Wheel Service to be his separate property. Mr. Clock did not express an opinion as to the character of defendant's interest in the partnership and did not recommend whether the offer previously made by Mr. Cameron to his wife should be accepted. He wrote a letter to defendant's attorneys dated June 2, 1941, in which he stated that plaintiff felt she did not have adequate information on which to reject or accept the offer previously made by defendant's counsel and requested (1) a statement of the financial condition of the Motor Rim and Wheel Service as of the closing of the books in December, 1940, as prepared by the certified public accountant who did such work for the partnership, (2) a statement of the withdrawals made by defendant from the partnership since its organization in June, 1925, and (3) the amounts paid to him as salary. The letter stated ''We believe you can appreciate the fact that before she can ascertain what her community property consists of that she should have this information, and that pending an adjustment of the differences the payments requested should be made.'' Defendant's counsel answered on June 5, 1941, transmitting the annual report of the partnership dated December 27, 1940, and stating it showed the net worth of the business ''of which Mr. Cameron is the owner of one half.'' The letter recited that defendant's original contribution to the partnership was his separate property, and said ''It would be difficult, if not impossible, to furnish a complete statement of the withdrawals that Mr. Cameron has had from Motor Rim and Wheel Service since the organization of the business. Mr. Cameron has not received any salary, but as we understand it, the partners have simply made withdrawals from time to time as profits were available. The business has been profitable, and Mr. Cameron's withdrawals have been quite substantial, . . . It is our definite opinion that Mr. Cameron's entire present interest in Motor Rim and Wheel Service would have to be held to be separate property.''

On June 27, 1941, Mr. Clock notified defendant's counsel that plaintiff had arranged to have other attorneys represent her and that he was delivering to her the correspondence previously had between the attorneys.

After the filing of the separate maintenance action on June 30, 1941, negotiations on behalf of plaintiff were undertaken by Messrs. Fainer and Parsons with defendant's attorneys. They received either from plaintiff or from Mr. Clock the correspondence previously passing between the latter and

defendant's attorneys and the auditor's report for 1940 which had been sent to Mr. Clock. They had several discussions with plaintiff about the respective properties of herself and defendant. Mr. Parsons made investigations into the private conduct of defendant and into his finances and properties; he made inquiries concerning the business through employers' associations and other available sources of information.

Mr. Parsons was told by defendant's attorneys he might have access to any statements or records that could be obtained. They never refused to give any information concerning the property rights of the parties. He was told that "anything he wanted he could have." The allegations in the separate maintenance complaint were based on information from reports given by plaintiff to her counsel and on the latters' personal investigation.

In the autumn of 1941, defendant instructed his auditor to furnish information to plaintiff's counsel and when Mr. Parsons called on the telephone the auditor gave him all the information he requested.

At the first meeting of plaintiff's attorneys with defendant's counsel, which took place early in August, 1941, Mr. Parsons stated that in his opinion Mrs. Cameron had an interest in the Motor Rim and Wheel Service because Mr. Cameron had been employed in the business, had devoted his time to it, and his contribution and work should be considered community property. The effect of *Van Camp* v. *Van Camp*, 53 Cal.App. 17 [199 P. 885], and *Estate of Pepper*, 158 Cal. 619 [112 P. 62, 31 L.R.A.N.S. 1092], was discussed. Counsel for defendant expressed the view that the interest in the partnership was defendant's separate property. At another meeting in August between counsel for the parties they respectively expressed the same opinions discussed at the previous meeting.

Under date of August 13, 1941, defendant's counsel made a written proposition for a settlement of the property rights of the parties stating in detail his proposal for a division of the property, including a waiver and relinquishment of any and all claims made by plaintiff to the Motor Rim and Wheel Service and to shares of stock in Tibbets-Cameron Lumber Company. Counsel stated in the letter "we would not advise Mr. Cameron to go any farther than he has gone in making this proposal, because, as we view the situation, if the settlement on this basis is not acceptable to Mrs. Cameron," it would be better "to allow the court to deter-

mine the property rights of the parties." On August 23d, plaintiff's counsel responded that the proposal had been discussed with Mrs. Cameron and "she is not willing to accept this settlement; and we may say that we do not feel that we can advise her to accept the same." There were no further negotiations toward a settlement for several months.

On February 10, 1942, at the suggestion of Mr. Parsons, a meeting was had between Messrs. Parsons, Fainer and defendant's attorneys. The same questions previously discussed were again argued. The result of the conference was an agreement upon the terms of settlement which would be recommended to the parties. One of defendant's counsel prepared a draft of the agreement and left it with Mr. Parsons on February 12th. On that day Mrs. Cameron met with her attorneys and was advised that they thought she should sign the agreement. She took the draft of the agreement and consulted with Mr. Perry, an attorney whom she had known for many years. He told her it was not fair and he was surprised that Mr. Cameron would ask her to sign it. On the following day plaintiff was again advised by her attorneys that they were still of the opinion that she should sign the agreement, that "a bird in the hand was better than two in the bush." The attorneys' secretary stated that she had listened to different things in court and that Mrs. Cameron "might come off worse" if she did not sign the document.

On February 16, 1942, when the case was called for trial, plaintiff's attorney announced that she was considering whether she would sign the property settlement agreement. The court ordered a recess so that she and her counsel might discuss the matter further. Although plaintiff was undecided whether to sign and thought it was not fair, her attorney told her it was the best thing to do, and that the issue as to whether the Motor Rim and Wheel Service was separate or community property would be "bitterly contested" and defendant would attempt to show that it was his separate property. She objected to one provision of the contract—not however relating to property rights but to the custody of their adopted daughter. A change in this respect was made to meet her objection. After further conversation with her attorney she signed the agreement. Her complaint having been amended to pray for a divorce, she introduced her evidence upon which the court granted the decree. While she was testifying she stated in response to questions asked by

the trial judge that she had read the agreement, was satisfied with it and considered it fair.

With this background plaintiff alleged and the court found that the agreement had been obtained by defendant through his fraud and misrepresentation. From the date of separation until the signing of the agreement the issue was clearly defined. In her verified pleadings and in her questionnaire she had alleged and in her conferences with her attorneys plaintiff had maintained that defendant's interest in Motor Rim and Wheel Service was community property. Her attorneys had the same belief and so argued the facts and the law with defendant's counsel who as vehemently insisted that it was his separate property. But notwithstanding plaintiff's sworn allegations in her pleadings and questionnaire, which were made and filed after defendant had told her his interest in Motor Rim and Wheel Service was his separate property and that she had no interest in it, she testified at the trial of the instant case "that she accepted his [defendant's] statement from the first" as a true statement of the nature of his interest in the partnership. Manifestly the two positions are incompatible. If, as she testified at the trial, she accepted and believed her husband's statement "from the first" that the property claimed by him to be his separate property was in fact of that nature, her sworn statements in the pleadings in the separate maintenance action were not true. On the other hand, if her verified pleadings reflected her honest belief it is obvious that she did not believe or rely on defendant's statement.

Plaintiff's attorneys need not have been content with the letter stating that it was "difficult if not impossible" to furnish a statement of defendant's withdrawals from the partnership. They had the privilege at any time prior to the signing of the agreement and the trial of the divorce action of examining the books of the company, permission having been offered by defendant and his counsel. In the absence of such voluntarily granted opportunity they could have pursued the customary procedure of taking defendant's deposition or obtaining an order of court for an audit of the books and an appraisal of the property, or could have used any other means provided by law for procuring the desired information. The door was never closed to them. The records were produced at the trial of the instant action showing defendant's withdrawals and all other information necessary to a determination of the facts. No reason appears

why they were not examined by plaintiff's attorneys before the property settlement agreement was signed.

While plaintiff makes no direct charge of neglect or omission on the part of her attorneys, her argument is directed almost as much to a discussion of what they failed to ascertain as to what defendant is claimed to have concealed. She contends that because they did not make the proper investigation bearing on the community nature of the property or any examination of defendant's books or those of the partnership she was deprived of property which she should have then had and should now obtain from defendant through the setting aside of the agreement. In her briefs she emphasizes the high standing of defendant's counsel and absolves them from "fraud, double-dealing, or the slightest impropriety of conduct" and from any part in the alleged misrepresentation. The truth is that neither defendant nor his attorneys are in any degree responsible for the failure of plaintiff's attorneys to ascertain the fact that were open to examination for the asking. If they neglected to investigate by auditing the books, appraisal of the property, taking depositions or otherwise, such neglect is not chargeable to defendant. They knew that the Motor Rim and Wheel Service had done a vast amount of business, kept books and had an auditor from whom any wanted facts could be obtained. Defendant's withdrawals and any other disposition of the partnership funds were available at all times. Any neglect on the part of plaintiff's attorneys is hers and if it resulted in misfortune for her defendant is in nowise responsible.

But the record does not show any neglect by plaintiff's attorneys. Mr. Parsons, who participated in the settlement on behalf of plaintiff, was called by her as a witness. He testified that their investigations related not only to defendant's conduct but to his financial and property rights; that the information they had when they drew the complaint in the separate maintenance action had been obtained either through statements made to them by their client or from their own private, separate investigation; that the allegations in that complaint as to the value and the community character of defendant's partnership interest were based on what plaintiff told him, on the information contained in the reports he had received, on "my own personal investigation of the matter, and sizing up the situation."

When one undertakes an investigation and proceeds with it without hindrance it will be assumed that he con-

tinued until he had acquired all the knowledge he desired and was satisfied with what he had learned. He cannot be heard to say that he relied on the representations of the other party. (*Carpenter* v. *Hamilton,* 18 Cal.App.2d 69, 71-72 [62 P.2d 1397].) ▉ If he becomes aware of facts that tend to arouse his suspicion, or if he has reason to believe that any representations made to him are false or only half true, it is his legal duty to complete his investigation and he has no right to rely on statements of the other contracting party. (*Idem,* p. 75.) If defendant herein had intended or attempted any deception in reference to the nature or value of the property it would have been quickly disclosed to plaintiff and her attorneys with the means that were at their command. There was nothing of a technical nature in connection with the business. An analysis of simple bookkeeping would have disclosed the facts during the negotiations as completely as at the trial of the instant case.

Insofar as the questions of law are concerned it is conceded that the character of the disputed property was and is debatable. At the trial of the instant case one of plaintiff's attorneys, while arguing an objection to a question, stated, "if five different attorneys were asked that question it is probable that you would have five different answers." Whether the constantly iterated assertion by defendant and his attorneys that the property was his separate property was a representation of law or fact need not be determined. The attorneys disagreed and debated during all their conferences upon that question. If it be deemed a representation of fact its truth or falsity could have been ascertained from the books of the partnership. If it were a representation of law plaintiff's attorneys were competent to advise their client as to the validity of such claim. Plaintiff's counsel were not coerced in any manner to recede from their position or to change their opinion concerning the law. On the question of fact they could have followed defendant's original investment in the partnership, his additional advancements to the business, his withdrawals for salary, expenses or other purposes. If they were not satisfied with the agreement as proposed on behalf of defendant they could have adopted the suggestion made by the latter's attorneys in their letter of August 13, 1941 "to allow the court to determine the property rights of the parties." When plaintiff's attorneys advised her that the issue would be "bitterly contested" they were in court to try a contested case and it is presumed that they were

ready for the trial of all questions that were at issue under the pleadings. The decision of plaintiff's attorneys to accept defendant's proposal without a contest, although now claimed to have been ill-advised and unfair to her, was her decision and she is bound thereby. At the trial of the instant case she testified in substance that she felt that to follow her attorney's advice was the right thing to do.

 Since the nature and character of the property, whether separate or community, had been discussed by the attorneys during the negotiations, and since it was one of the issues that would be "bitterly contested" it is presumed that defendant's attorneys also had prepared for the trial of that question, and that they were ready to present the facts as well as the law to substantiate their position. Plaintiff's absolution of defendant's counsel from any blame is a virtual admission that she was not deceived by any representations made to her attorneys and through them to her. Defendant had no conversations at any time with plaintiff's attorneys and had not communicated with plaintiff for six months prior to the signing of the property settlement agreement. On the occasion of their last conversation plaintiff told her husband she would not sign the agreement. All statements of fact and of law on his behalf were made by his counsel. If they were possessed of the facts relating to defendant's interest in the partnership business, and it will be assumed that the facts were within their knowledge in view of the necessity for their preparation for trial, and if, as plaintiff concedes, they were free from fraud, any statements made by them on behalf of their client must be assumed to have been sustained by the books of the partnership and the records kept by defendant. Furthermore, some time after the conference between the attorneys in August, 1941, (this was the last until February, 1942) when all representations as to the facts and the law concerning the property had been made, discussed and debated by counsel, plaintiff filed her answer to defendant's cross-complaint in which she again asserted the community character of the property. In maintaining this position she was not relying on any representations made by or on behalf of her husband but was taking a directly opposite stand.

The facts in *Jorgensen* v. *Jorgensen*, 32 Cal.2d 13 [193 P.2d 728], are comparable to those in the instant case. The plaintiff, Mrs. Jorgensen, sought to set aside the provisions of an interlocutory decree of divorce relating to a property

settlement agreement on the grounds of fraud or mistake, alleging that some of the property described in the agreement as the separate property of her husband was in fact community property and that the defendant had fraudulently represented it to be his separate property. She alleged that she and her attorney relied exclusively on the defendant's representations and made no investigation as to the character of the property. After stating that "as the manager of the community property the husband occupies a position of trust (Civ. Code, secs. 172-173, 158) which is not terminated as to assets remaining in his hands when the spouses separate" and that it is a fiduciary duty of a husband to account to his wife for the community property when they are negotiating a property settlement, the court said (32 Cal.2d 13, at p. 22 [193 P.2d at p. 734]): "There is no allegation in the complaint that defendant concealed assets that were part of the community property. The assets were disclosed, and the complaint is based on the theory that defendant fraudulently claimed certain community property as his separate estate. The classification of property as separate or community is frequently difficult. A husband at the time of divorce or separation is entitled to take a position favorable to his own interest in claiming as his separate property assets that a court might hold to be community property. Confronted with the assertion by the husband that certain assets are his separate property the wife must take her own position and if necessary investigate the facts." (Citing cases.)

The facts in the instant case place plaintiff in a weaker position than Mrs. Jorgensen found herself. The latter relied on her husband's representations so implicitly that she made no investigation. Plaintiff in the instant case at no time believed or relied on defendant's statements. She alleged under oath at the outset, contrary to defendant's contention, that the property was community property and stated its value. Her attorneys made an investigation and became satisfied that her contention was untenable and that defendant's statements were true, both as to the nature and the value of his partnership interest. After the investigation and on her attorney's advice, plaintiff recanted and signed the property settlement agreement, accepting her husband's offer.

If this court should, as plaintiff now seems to do, disregard her sworn allegations in her pleadings in the divorce action and accept as true her evidence in the instant case that she at all times relied on defendant's representations, then the

further language in the Jorgensen case applies: "If the wife and her attorney are satisfied with the husband's classification of the property as separate or community, the wife cannot reasonably contend that fraud was committed . . . Plaintiff is barred from obtaining equitable relief by her admission that she and her attorney did not investigate the facts, choosing instead to rely on the statements of the husband as to what part of the disclosed property was community property."

Defendant was entitled to and did "take a position favorable to his own interest in claiming as his separate property" assets that the court might have held to be community property if plaintiff had followed the suggestion in the letter of defendant's attorneys that the matter be submitted to the court. She did "take her own position" and after an investigation of the facts she acted on her attorneys' advice.

Since the Jorgensen case is decisive of the questions herein discussed it is unnecessary to refer to the authorities cited by plaintiff and it is likewise unnecessary to consider the other points raised and argued in the briefs of the respective parties.

The judgments are and each of them is reversed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied December 3, 1948, and respondent's petition for a hearing by the Supreme Court was denied January 13, 1949.