[Civ. No. 20051.   Second Dist., Div. Three.   Apr. 22, 1954.]

WAYNE H. TEIPEL et al., Appellants, v. SOUTHERN NEVADA VENDING COMPANY (a Partnership) et al., Defendants; RAY WHERRIT et al., Respondents.

Spencer & Harris and E. O. Berry for Appellants.

D. Chase Rich for Respondents.

VALLÉE, J.—Appeal by plaintiffs from an adverse judgment in a suit for rescission of a contract to purchase a slot machine, pinball game, and phonograph recording route business in Las Vegas, Nevada, on the ground of fraud.

The court found that plaintiffs had purchased only after a full and complete investigation and that there had been no fraud. The only question is whether the findings are supported by the evidence.

The evidence and the reasonable inferences therefrom will be stated in the light most favorable to defendants-respondents, disregarding conflicting evidence and inferences.

On October 14, 1951, plaintiffs read an advertisement in the Los Angeles Examiner offering for sale a slot machine route located in Las Vegas, which stated, "Income $1,000. Week. Price $28,500." The next day they contacted defendants' agent, one Powers. Powers described the route to them. The following day he showed them a memorandum signed by defendant Wherrit which stated that the gross was $850 to $1,250 a week. He told them the net was around $300 a week. Plaintiffs then deposited $1,500 with Powers with the written understanding the money was to be returned if the route was not satisfactory. Plaintiff Wayne H. Teipel testified he knew the $1,500 would be returned to him if, after he investigated the transaction, he did not like it. Arrangements were then made to meet Wherrit in Las Vegas.

On October 22, plaintiffs, Powers, and Wherrit met at defendants' place of business in Las Vegas. After introductions, plaintiffs asked to see evidence of defendants' income; they asked Wherrit what he had to show to prove the income "on the route." Wherrit told plaintiffs he had been doing well; he had the records and all the receipts; they could look at them for themselves. Wherrit then showed plaintiffs books containing all of defendants' collections from every location since they had been in business. Plaintiffs examined them. They were also shown what are called "route books" in which were recorded collections and taxes due from all locations over a period of time preceding the meeting. Plaintiffs made "mathematical compilations" from them.

Plaintiffs, Wherrit, and Powers then drove around Las Vegas and visited locations where slot machines and phonographs were located. They returned to Wherrit's place of business and "he put out everything"—all the records in-

cluding the bank books—''on the desk.'' Wayne H. Teipel went through the ''collection books and the bank books and the deposits, and he seemed to like very much what he had seen.''

Plaintiffs left and later called Powers and told him ''it was what they wanted, and they would buy it.'' That evening plaintiffs signed three agreements by which defendants assigned their interest in conditional sales contracts for the purchase of phonographs to plaintiffs, and plaintiffs assumed the obligations; plaintiffs gave Powers a check for $13,682.

On October 23, plaintiffs and Wherrit drove around the route. At each location Wherrit gave plaintiffs the city, county, and federal tax figures with respect to that location. On returning to Wherrit's place of business, plaintiffs assisted Powers in making an inventory. They again referred to the ''route books.'' All of the records of the business were made available to them. Powers testified: ''Everything was laid out to them [plaintiffs] that was there, to my knowledge, and it satisfied them.''

In the late afternoon of October 23, the parties executed a conditional sales contract by which defendants agreed to sell and plaintiffs agreed to buy the route and machines. The contract fixed the balance of the purchase price as $10,383.48, payable in monthly instalments of $432.64. Wherrit signed a document stating he would not engage in a similar business within 50 miles of Las Vegas for five years.

Wherrit, who lived in San Luis Obispo, California, stayed in Las Vegas several days assisting plaintiffs in taking over the business. About a week after he left Las Vegas, Congress passed a measure increasing the federal tax on each slot machine from $150 to $250 a year. Plaintiffs then called Powers and complained about the tax and the volume of money coming in from the machines. There was evidence that defendants' bank deposits from July 2, 1951, to October 17, 1951, were less than $1,000 a week. On November 5th plaintiffs abandoned the machines and the business, left the keys with an employee, and moved to Los Angeles. On November 15 they served a notice of recission. They did not return to Las Vegas. At the trial they did not know what had happened to the route or the machines, and were not in a position to restore any of the machines. During the time they operated the business they did not correctly record in their books the money collected.

When one undertakes an investigation and proceeds with it without hindrance, it will be assumed that he continued until he had acquired all the knowledge he desired and was satisfied with what he learned. He will not be heard to say that he relied on the representations of the other party. (*Carpenter* v. *Hamilton*, 18 Cal.App.2d 69, 71-72 [62 P.2d 1397]; *Cameron* v. *Cameron*, 88 Cal.App.2d 585, 593-594 [199 P.2d 443]; 12 Cal.Jur. 759, § 35; 37 C.J.S. 284, § 37.)

The evidence we have related amply supports the findings that plaintiffs investigated all of the records and assets of defendants "to their fullest satisfaction" and no effort was made by anyone "to hide or cover up any matter whatsoever," and that there was no fraud. The court was warranted in concluding—notwithstanding payment of part of the purchase price on October 22, 1951—that the parties did not intend the transaction should be binding until the conditional sale contract was executed, that the sale was not concluded until the contract was signed on October 23, and that prior thereto plaintiffs made a full and complete investigation and were satisfied to make the purchase on what they learned. The fact that there was evidence from which the trial judge could have reached a different conclusion does not impeach his findings.

Since these findings support the judgment, it is unnecessary to consider plaintiffs' attack on other findings.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.