[Civ. No. 5114. First Appellate District, Division One.—June 30, 1925.]

R. L. RUDY et al., Respondents, v. M. F. A. SLOTWINSKY, Appellant.

[1] JUDGMENTS—FRAUD—PERJURED TESTIMONY—EQUITY.—The mere fact that a plaintiff may have obtained a judgment upon allegations that may have been untrue, does not authorize the setting

1. See 15 Cal. Jur. 18; 15 R. C. L. 768.

aside of th. judgment. Equity will not relieve by injunction against a fraudulent judgment, unless the fraud in obtaining it is extrinsic to the merits; and it will grant no relief even in cases where a judgment is obtained through perjured testimony.

[2] ID.—Notice of Overruling Demurrer—Sufficiency of Service.— In this action to set aside a judgment alleged to have been obtained by default through extrinsic fraud based, among other things, upon an alleged insufficient service of notice of overruling of demurrer and time to answer, the evidence that the person who signed the admission of service of the notice had offices together with the attorneys for defendants, that it was necessary to go through his office to enter the office of said attorneys, that his name was on his door with the name of said attorneys, and that he was in the habit of and had signed hundreds of different papers for said attorneys, showed a service sufficient to satisfy the requirements of section 1011 of the Code of Civil Procedure, even assuming that said person did not give the copy of the notice to said attorneys.

[3] ID.—Opinion as to Merits of Case—Abandonment by Defendant's Counsel.—In such action, the fact that plaintiff's attorney, during a discussion in relation to the property of one of the defendants, stated to the attorneys for the other defendants that "he was not concerned much with the other defendants, because he did not think he had a case against them of any particular merits," did not justify the attorneys for said other defendants in concluding that the case would be discontinued against his clients nor warrant him in completely ignoring any further progress of the proceedings.

[4] ID. — Judgment Through Neglect — Unwarranted Relief — Equity.—Where a judgment by default is obtained against a party through his own neglect, it constitutes no ground for equitable intervention that his adversary obtained relief to which he may not have been entitled.

[5] ID.—Issues—Unjust Judgment—Res Adjudicata.—Equity will not entertain a bill for relief against a judgment founded on any matters which were tried and determined in the action at law, or which were there so put in issue that they might have been adjudicated, however unjust the judgment may appear to be. Such matters have become *res adjudicata.*

[6] ID.—Equity—Due Diligence.—While one seeking to set aside a judgment is not limited to the relief provided for by section 473 of the Code of Civil Procedure, but may, where the facts justify it, invoke the aid of a court of equity, he must, in doing so, exercise due diligence; and defendants cannot be said to have acted

4.   See 15 Cal. Jur. 11; 15 R. C. L. 740.
6.   See 15 Cal. Jur. 27; 15 R. C. L. 744.

with due diligence where, after appearing in an action through their attorneys, they wait more than two years and three. months after their default has been entered, and about a year after judgment by default has been entered against them, before taking any steps whatsoever to secure relief.

(1) 34 C. J., p. 475, n. 6.     (2) 31 Cyc., p. 353, n. 56.     (3) 34 C. J., p. 466, n. 79.     (4) 34 C. J., p. 422, n. 25.     (5) 34 C. J., p. 466, n. 2. (6) 34 C. J., p. 482, n. 85.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. J. Trabucco, Judge Presiding.   Reversed.

The facts are stated in the opinion of the court.

Carl W. Mueller for Appellant.

H. M. Anthony and J. W. Clarke for Respondents.

TYLER, P. J.—This is an appeal from a judgment in favor of plaintiffs granting a permanent injunction against defendant from proceeding to enforce a certain judgment and setting aside and canceling the same.

The complaint alleges that defendant herein on April 17, 1920, commenced an action against the above-named plaintiffs R. L. Rudy and E. D. Hopper and one Garbini, as directors and incorporators of Chateau Bellevue Vineyard Company, a defunct corporation, and that on May 21, 1920, Rudy and Hopper demurred to the complaint, which demurrer was sustained. That an amended complaint was filed on the twentieth day of August, 1920, to which Rudy and Hopper again demurred and this demurrer was, on September 10, 1920, overruled with ten days' leave to answer.

Proceeding, the complaint then alleges that on September 14, 1920, plaintiff Slotwinsky in that action by and through his attorney attempted to serve notice of the overruling of the demurrer upon Clark and Clark, attorneys for said defendants Rudy and Hopper.

In this connection it is alleged, in substance, that the notice of the overruling of the demurrer was served on one Ellison, who occupied an adjoining office to Clark and Clark,

but who was in no manner connected with the business of said attorneys and not authorized to receipt for or give admission of service of any legal papers or documents, but notwithstanding this fact said Ellison signed an admission of service of the notice of the overruling of the demurrers as follows: "J. W. Clark per E. Ellison." That Ellison, so it is alleged, at no time informed Clark and Clark of the fact that he had signed an admission of such service.

It is then alleged that at the time of the finding of the demurrer by Hopper and Rudy, the attorney for plaintiff Slotwinsky had remarked to J. W. Clark, one of the attorneys for the defendants, that he supposed he would have to collect from the estate of one F. D. Burr, deceased, he being the party with whom Slotwinsky had had the transaction which was the subject matter of the litigation. That due to this remark Clark and Clark concluded that the action would be discontinued as to their clients, and, not having heard any more concerning the demurrer which they had interposed, they considered the case closed. Nothing further was heard of the matter, so it is alleged, by either Hopper or Rudy or their attorneys Clark and Clark until about two years and a half thereafter and on the sixth day of March, 1923, when a letter was addressed by one Carl W. Mueller, acting attorney for Slotwinsky (his original attorney having been killed September 28, 1921), to Hopper informing him that his real estate was about to be sold under writ of execution upon a judgment secured in the action referred to.

The complaint in the original action is then set forth in full. It appears therefrom that it was one based upon a claim of liability against the directors of Chateau Bellevue Vineyard Company, under section 309 of the Civil Code, it being alleged in said action that the directors of that corporation had incurred an indebtedness in the sum of twelve hundred dollars at a time when the total amount of the subscribed capital stock of the corporation did not exceed the sum of sixty dollars, thus making them individually liable for debts created beyond the subscribed capital stock. Proceeding, the complaint in the instant case charges that the complaint in the original action, in which the judgment was procured and here sought to be set aside, was predicated on the false and fraudulent misstatement of the total amount of the subscribed capital stock of the corporation, as the state-

ment that the same did not "exceed the sum of Sixty Dollars" was falsely and fraudulently made with the object and intent of unjustly obtaining a judgment against defendants in said action.

Further allegations are to the effect that on the 28th day of April, 1922, judgment was rendered by default against Rudy and Hopper for the sum of $1,200, interest and costs of suit, which judgment was entered on April 29, 1922.

Plaintiffs then allege that had they knowledge of the entry of their default, or had they knowledge of the trial, they would have taken steps in said case to have protected their rights; that they would have proved to the court upon the hearing of the case, that it was not true no more than sixty dollars of the capital stock of the corporation had been subscribed and thus have avoided liability.

The complaint concludes with a prayer for a cancellation of the judgment. To this complaint defendant filed a demurrer alleging that it did not state facts constituting a cause of action nor a cause for equitable relief, nor did it state facts sufficient to justify the issuance of a restraining order or injunction.

The demurrer was overruled.

Defendant answering alleged in effect that the notice of the overruling of the demurrer was legally served. It also denied that any statements had been made to the attorneys in the original action which would justify them in concluding that the action would not be further prosecuted and it also denied that the statement contained in the original complaint concerning the amount of the subscribed capital stock of the corporation was false. As an additional defense it set forth certain facts charging that defendants, as directors of the corporation named, had fraudulently obtained a certain tract of land of the value of twelve hundred dollars in exchange for a note executed by the corporation, which was worthless.

Laches on the part of defendants was also pleaded. The trial court found, among other facts, that the attorneys for defendants in the original action had relied upon statements made by the attorney for the plaintiff that the case would not be further prosecuted, and also that the attorneys for the defendant had never been properly notified of the overruling of their demurrer. It also found that the complaint in the

action in which the judgment was obtained had been predicated upon a false statement concerning the total amount of the subscribed capital stock of the corporation and that plaintiff herein had unjustly recovered the judgment sought to be set aside, and the relief prayed for was granted.

In support of the judgment respondents claim that the facts as found by the court constitute extrinsic fraud justifying the setting aside of the judgment.

We cannot subscribe to this contention. [1] The mere fact that defendant herein may have obtained the judgment here sought to be set aside upon allegations that may have been untrue, did not authorize the setting aside of the judgment. Equity will not relieve by injunction against a fraudulent judgment, unless the fraud in obtaining it is extrinsic to the merits. It will grant no relief even in cases where a judgment is obtained through perjured testimony. (*Stern* v. *March*, 132 Cal. 616 [64 Pac. 994]; *Eisenmeyer* v. *Thompson*, 186 Cal. 538 [199 Pac. 798]; *Pico* v. *Cohn*, 91 Cal. 135 [25 Am. St. Rep. 159, 13 L. R. A 336, 25 Pac. 970, 27 Pac. 537]; *Borland* v. *Thornton*, 12 Cal. 440.)

This rule, however, seems to be conceded by respondents' counsel, as they state that the evidence upon the subject is important only as showing that their clients possessed equities upon the merits of the original action which it was necessary for them to do in making an application to set aside the default judgment.

The extrinsic fraud relied upon, therefore, consists in the alleged remarks of the attorney for defendant in the original action indicating that the case would be abandoned and in the taking of the default without giving a legal notice of the overruling of the demurrer where time had been given to answer and in proceeding to trial and having a judgment entered when the attorney was kept in ignorance of the proceedings.

Assuming that these facts, if true, would constitute extrinsic fraud, we do not think the evidence upon the subject justifies the conclusion that defendants were prevented from fully presenting their claims in the original suit by reason thereof. The original judgment recites that notice of the overruling of the demurrer was given. [2] Ellison, who signed the admission of service on the notice, testified in the instant case that the admission was in his handwriting. He

further testified that he had offices together with Clark and that it was necessary to go through his office to enter Clark's office; that his name was on the door with the name of Clark and Clark, and that he was in the habit of and had signed hundreds of different papers for Clark. Clark himself testified that he had at times done so. Assuming that Ellison never gave the copy of the notice to Clark, nevertheless the service under these circumstances was sufficient to satisfy the requirements of section 1011, Code of Civil Procedure. [3] Nor was there any evidence to support the finding that the attorneys for defendants in the original action (plaintiffs herein) were prejudiced or kept away from the trial by anything the former attorney had said, giving such remarks their full force and effect. All that is proved to have been said is that plaintiff's attorney during a discussion in relation to Burr's property stated to Clark that ''he was not concerned much with the other defendants, because he did not think he had a case against them of any particular merits.'' This statement did not justify Clark in concluding that the case would be discontinued against his clients nor warrant him in completely ignoring any further progress of the proceedings.

[4] Where a judgment by default is obtained against a party through his own neglect, it constitutes no ground for equitable intervention that his adversary obtained relief to which he may not have been entitled.

[5] Equity will not entertain a bill for relief against a judgment founded on any matters which were tried and determined in the action at law, or which were there so put in issue that they might have been adjudicated, however unjust the judgment may appear to be. Such matters have become *res judicata*. This rule assumed that there has been a trial in which the respective parties have had an opportunity fully to present their claims. (34 Corpus Juris, 466.)

There must be some end to litigation. [6] Here plaintiffs had appeared in the action through their attorneys. The exercise of the slightest diligence on their part would have acquainted them with the fact that a judgment had been rendered against them. It was a matter of public record. They could have proceeded under section 473, Code of Civil Procedure, where relief might have been granted

73 Cal. App.—30

them. They did not do so, but waited over two years and three months after their default had been entered on November 29, 1920, and about a year after the judgment had been rendered on April 28, 1922, before taking any steps whatsoever. While it is true that one seeking to set aside a judgment is not limited to the relief provided for by section 473, Code of Civil Procedure, but may, where the facts justify it, invoke the aid of a court of equity, he must, in doing so, exercise due diligence. The instant case in our opinion, however, does not present such a situation. Here, as stated, the default was a matter of public record, open to inspection at all times to the plaintiffs and their attorneys. This fact should have put them upon inquiry which would have led to the discovery of the alleged fraud in the procurement of the judgment. The contention that they had a right to rely upon a service of a notice of the overruling of the demurrer can avail them nothing when it is considered that the judgment sought to be set aside recites that such a notice was served and in the evidence in the instant case shows that it was in fact made. Nor did the remarks of plaintiffs' former counsel justify them in practically abandoning their case. The mere expression of an opinion as to the merits of a case by an attorney could not possibly warrant opposing counsel in believing that no further action would be taken and it does not constitute fraud practiced upon a party seeking relief against a judgment which prevented him from presenting his case to the court. Solemn judgments cannot be set aside upon such a showing.

The judgment is reversed.

Knight, J., and Cashin, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 27, 1925.

Knight, J., *pro tem.*, did not participate.