[Civ. No. 29628. Second Dist., Div. Five. May 22, 1967.]

R. H. ROUSSEY et al., Plaintiffs and Respondents, v. ERNEST W. HAHN, INC., et al., Defendants and Appellants.

252

James L. Barrett for Defendants and Appellants.

Nordman & Cormany, Nordman, Cormany, Hair & Compton and Charles R. McGrath for Plaintiffs and Respondents.

STEPHENS, J.—In 1959, R. H. Roussey and others were owners of a parcel of land in Oxnard, California. Defendant R. Leon Edgar & Associates, Inc. (Edgar) was engaged by plaintiffs to prepare plans and specifications for a building to be built on plaintiffs' land. Edgar was to supervise that construction. Defendant Ernest W. Hahn, Inc. (Hahn) by contract was engaged by plaintiffs to construct the building. There was no contractual association between Edgar and

Hahn. As part of that construction, The Flintkote Company (Flintkote) furnished to Hahn certain roofing materials to be used by Hahn.

The building was completed by Hahn according to Edgar's plans. Problems arose concerning the watertight integrity of the roof. Plaintiffs brought this action against Edgar, Flintkote, and Hahn for damages caused by the roofing defects.

The complaint was filed on June 3, 1964, and summons issued. Defendants Edgar and Flintkote were served on June 11, 1964. Flintkote filed its answer and a cross-complaint on July 23, 1964. Hahn did not file an answer though service of complaint had been duly made on June 15, 1964. On July 23, 1964—the same day that codefendant Edgar filed its answer—plaintiffs took Hahn's default. On July 28, 1964, judgment was entered, as prayed, by minute order.

The service upon Hahn was made upon one Herman Maier, secretary and executive vice president of the corporation. He was the Hahn corporate officer upon whom all legal service normally was made. Following normal procedure, Maier conducted a preliminary investigation of the matter. Within 10 days of service, Maier determined that the complaints of defects and alleged damage were caused by structural design, not workmanship or material. He notified codefendant Edgar of his conclusions. By conversation, Maier informed Edgar that it appeared the liability was due to the Edgar design. Edgar told Maier to send the summons and complaint and Edgar would present them to their insurance company and have them ''take care'' of the matter.

Maier thus believed Edgar would have his insurance carrier settle the matter or answer the complaint on behalf of Hahn. Maier did not thereafter follow his normal procedure of forwarding the summons and complaint to Hahn's insurance carrier or attorney, but rather sent them to Edgar. Edgar, however, did not ''take care'' of this matter on behalf of Hahn, but answered for itself only. On the same day Hahn's default was entered, Edgar filed its answer denying plaintiffs' allegations. Edgar also filed a cross-complaint against Hahn and Flintkote. Summons issued on the cross-complaint but was not served upon either cross-defendant. On January 28, 1965, a letter was sent to Hahn by plaintiffs' attorney informing Hahn of the default judgment entered against them, and demanding payment in the amount of $5,782.70. This was the first notice Hahn had as to the default that had occurred. This letter was mailed six months and five days

after the entry of default; hence, the period provided for motion to vacate default judgment (Code Civ. Proc., § 473) had expired.

On February 23, 1965 (26 days after the letter was received and a full month after expiration of time to move for relief from default), Hahn filed a Notice of Motion to Vacate Default and Set Aside Judgment, along with proposed answers to plaintiffs' complaint and Edgar's cross-complaint, plus cross-complaint against Edgar and others. This motion was denied. Hahn appeals.

In determining Hahn's right to relief from default, the trial court concluded itself bound by *Wattson* v. *Dillon* (1936) 6 Cal.2d 33 [56 P.2d 220].[1] The court concluded facts of the *Wattson* case were indistinguishable from those before it in this case.

Hahn raises three issues on this appeal:

(1) "Did the Trial Court have discretion of Judgment in applying the facts of this case to the applicable law and fail to exercise that discretion?

(2) "Are the facts of this case distinguishable from the facts of '*Wattson*'?

(3) "Should the Appellate Court as a matter of justice and in accordance with the law governing relief from default vacate the default and set aside the default judgment entered?"

The *Wattson* case involved an action to vacate a final judgment. The trial court vacated the judgment but on appeal was reversed. The facts were: R. A. Wattson was under contract with the City of Los Angeles to construct certain street improvements. He sublet a portion of the work to the Hollywood Granite Company. Hollywood sublet a portion of the work to the Lewis Construction Company. Lewis negligently performed a portion of the work, resulting in injury to the property of the Dillons. The Dillons sued Wattson, Hollywood, and Lewis. Wattson was served on October 8, 1930. He immediately telephoned the agent of the bonding company indemnifying Hollywood, telling that agent that his company was looking to it to take care of the lawsuit. The agent advised that the complaint and summons should be sent to him, and promised that his company "would take care of it."

---

[1] The authority of *Wattson* has been seriously impaired by the later decisions of the Supreme Court in *Hallet* v. *Slaughter* (1943) 22 Cal.2d 552 [140 P.2d 3] and *Weitz* v. *Yankowsky* (1966) 63 Cal.2d 849 [48 Cal. Rptr. 620, 409 P.2d 700], discussed *infra*.

Wattson, in compliance with this request, sent the complaint and summons to the bonding company. In a letter of transmittal, Wattson reviewed the telephone conversation, and concluded: "Please be advised that we look entirely to you for protection in this matter."

On October 15, 1930, the bonding company acknowledged receipt of complaint, summons and letter of transmittal from Wattson. It further informed Wattson that the matter had been turned over to their claims department, and that the problem had been taken up with the Union Indemnity Company, the bonding company for Lewis Construction Company, and that "the latter company will handle this matter." About a week or 10 days after October 8, 1930, Wattson talked with Lewis of the Lewis Construction Company and was informed by him that "the matter had been handled satisfactorily." Still later, on October 21, 1930, Lewis informed Wattson that the matter had been attended to and that there was nothing further for Wattson to do.

As a result, Wattson made no appearance, and his default was taken in December 1930. Judgment against Wattson was entered in May of 1931 and a writ of execution levied in December of 1931. Upon the levy of execution, Wattson, for the first time, learned what had occurred. He immediately instituted an action to set aside the judgment. The Supreme Court held that under the facts (above set forth) Wattson was guilty of inexcusable neglect as a matter of law. The Supreme Court made it clear that the trial court made no finding indicating the existence of fraud, and that the basis of the motion by Wattson was solely mistake and accident.

The principles in a case such as that before us have been set forth in the case of *Weitz* v. *Yankosky* (1966) 63 Cal.2d 849 [48 Cal.Rptr. 620, 409 P.2d 700].[2] "A motion to set aside a default judgment is addressed to the sound discretion of the trial court, and, in the absence of a clear showing of abuse of discretion where the trial court grants the motion, the appellate court will not disturb the order. . . . [T]he policy of the law is to have every litigated case tried upon its merits, and it looks with disfavor upon a party, who, regardless of the merits of the case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary. [Citations.]" (Pp. 854-855.) As the motion

[2]*Weitz* v. *Yankosky* was decided January 19, 1966, some 9 months after the denial of motion in the case before us.

in the *Weitz* case, like in ours, ". . . was made more than six months after the default was entered, it was not directed to the court's statutory power to grant relief for mistake or excusable neglect under Code of Civil Procedure section 473. [Citations.] It was directed to the court's inherent equity power under which, apart from its statutory authority, the court has the power to grant relief from a default judgment where there has been 'extrinsic' fraud or mistake. [Citations.]

■ "Where a default is entered because defendant has relied upon a codefendant or other interested party to defend, the question is whether the defendant was reasonably justified under the circumstances in his reliance or whether his neglect to attend to the matter was inexcusable. [Citations.]" (P. 855.)

The trial court, in the case before us, in its order denying the motion to set aside the default, found as follows: "The Court finds that all of the allegations as contained in the Declarations of Herman Maier and Donald Marker are true. The Court states that it is its conclusion that this Court has no discretion in this matter, but that the Court is bound as a matter of law to rule against the motions. The Court therefore orders that the Motions to Vacate Default and Set Aside Default Judgment be denied.

"The Court further orders that this order and the record reflect that if the Court had any discretion whatsoever in this matter, the Court would grant both of Defendant Hahn's motions and set aside these defaults and have the matter heard on its merits as a matter of fairness, equity and justice; however, the Court is of the opinion that the facts in this case are so analagous [*sic*] to that of *Watson* [*sic*] v. *Dillon, 6 Cal.2d 33; 56 P.2d 220*, so as to be indistinguishable from that case, and that therefore this Court is bound as a matter of law to deny Defendant's motion. The Court is of the opinion in view of the *Watson* [*sic*] case that this Court cannot as a matter of law make a finding that Defendant Hahn (through its agent, Herman Maier) was not negligent and that Defendant acted reasonably and prudently and should be granted the relief sought, although it would so find and grant the relief sought if it were lawfully possible."

There are factual distinctions between *Wattson* and the case before us. Here, the defendant made substantial inquiry into the merits of the claim of plaintiff. It determined it was not the responsible defendant, and turned the matter over to

the codefendant thus determined to be responsible if any liability existed. Here, defendant reasonably believed the codefendant's insurance carrier (to whom it was instructed to forward the summons and complaint) would either settle the matter or answer the complaint on behalf of Hahn. It was not informed of the further actions (by way of cross-complaint) on the part of the relied-upon defendant. The first notice, after the service of summons and complaint, was six months and three days after the entry of the default judgment.

In *Wattson,* the initial contact to "have the matter taken care of" was not a codefendant, but the bonding company of a codefendant. The codefendant was informed of the action taken and confirmed it, giving further assurance that it "had been handled satisfactorily." Wattson was on notice before the filing of the action for he knew of the threatened suits and efforts to compromise the matter. Wattson made no inquiry as to whether the bond covered the liability, nor did he make investigation of legal defenses. Wattson received notice of the sustaining of the codefendant's demurrer with leave to amend. Wattson knew of the unreliability of his codefendant. There may be other differences between the two cases on their facts, but those above noted are sufficient to take the matter from "one as a matter of law" to within the broader principle "that the question of negligence is generally one for the trier of facts." (*Wattson* v. *Dillon, supra,* p. 39.) With regard to whether the circumstances warranted reliance by the defendant on a third party, the efforts made by the defendant to obtain a defense by the third party are, of course, relevant.

In the case before us, the trial court found that defendant acted reasonably in assuming that codefendant Edgar would defend and in following the instructions to forward the summons and complaint for that purpose to Edgar's insurance company. Both were known by defendant to be reputable in the extensive business association of defendant. As was stated in *Weitz* v. *Yankosky, supra,* (p. 856) : "Even if the mistake were caused by *some* negligence on defendant's part, this negligence might be excused if it in no way prejudiced the opposing party. [Citations.]"

We see here no delay which as a matter of law forecloses relief. This is considerably different than the year period of inactivity in *Wattson.* One moving in equity to set aside a default judgment must act diligently in making his

motion after he learns of the default judgment. A court, in determining whether a default judgment was secured by excusable extrinsic mistake, may properly determine that the defendant's conduct was excusable where he relied upon another interested party to assert the defense, and his reliance was reasonably justified under the circumstances.

There being factual distinctions between *Wattson* and our case materially affecting both reasonableness of reliance and diligence in seeking relief, it was within the equity powers of the trial court to weigh these factors. The case before us is not "so analogous to that of *Wattson* v. *Dillon*, 6 Cal.2d 33; 56 P.2d 220, so as to be indistinguishable from that case, . . ."

The trial court forcefully expressed itself in stating: "[I]f the Court had any discretion whatsoever in this matter, the Court would grant both of Defendant Hahn's motions and set aside these defaults and have the matter heard on its merits as a matter of fairness, equity and justice; . . ."

The order denying the motion to set aside the defaults is reversed. The trial court is directed to enter the order it desired in fairness, equity and justice, and grant the motion to vacate default and set aside default judgment.

Kaus, P. J., and Hufstedler, J., concurred.

A petition for a rehearing was denied June 7, 1967, and respondents' petition for a hearing by the Supreme Court was denied July 19, 1967.