Opinion
TRAYNOR, C. J.
Plaintiff appeals from an order of the Superior Court of San Mateo County modifying an interlocutory decree of divorce to relieve defendant of liability to pay federal income taxes assessed against the parties on income accruing to plaintiff in New Zealand.
Plaintiff secured an interlocutory decree of divorce from defendant on July 3, 1964. The decree included the disposition of the community and *470 separate property of the parties.[1] The decree provided, in part: “Defendant shall indemnify and hold plaintiff free and harmless in the matter of any monies due any taxing agency, whether Federal, State or County, for the calendar years prior to 1964.”
In 1966, following the divorce proceedings, defendant received a tax assessment of approximately $22,000 for federal income taxes based on theretofore undisclosed income accumulated during the marriage by a New Zealand corporation in plaintiff’s name. Defendant moved to modify the divorce decree to relieve him of any liability for taxes on the New Zealand income on the grounds of extrinsic fraud and extrinsic mistake. After a hearing on defendant’s motion, the trial court concluded that the tax provision in the decree “was included and approved by the parties as a result of the mutual mistake of the parties and further, that there was no intent of the parties that defendant should pay United States Federal income tax resulting from income to plaintiff in New Zealand.” The. court struck the tax provision from the decree “because of the mutual mistake of the parties.”
Under certain circumstances a court, sitting in equity, can set aside or modify a valid final judgment. (Olivera v. Grace (1942) 19 Cal.2d 570, 575-576 [122 P.2d 564, 140 A.L.R. 1328]; Caldwell v. Taylor (1933) 218 Cal. 471, 475 [23 P.2d 758, 88 A.L.R. 1194].) This power, however, can only be exercised when the circumstances of the case are sufficient to overcome the strong policy favoring the finality of judgments. “A basic requirement of an action which can lead to a valid judgment is that a procedure should be adopted which in the normal case will give to the parties an opportunity for a fair trial which is reasonable in view of the requirements of public policy in the particular type of case. If this requirement is met, a judgment awarded in an action is not void merely because the particular individual against whom it was rendered did not in fact have an opportunity to present his claim or defense before an impartial tribunal. . . . [P]ublic policy requires that only in exceptional circumstances should the consequences of res judicata be denied to a valid judgment.” (Rest., Judgments, § 118, com. a.)
Interlocutory divorce decrees are res judicata as to all questions determined therein, including the property rights of the parties. (In re Williams’ Estate (1950) 36 Cal.2d 289, 292 [233 P.2d 248, 22 A.L.R.2d 716]; Adamson v. Adamson (1962) 209 Cal.App.2d 492, 501 [26 Cal.Rptr. 236].) If a property settlement is incorporated in the divorce decree, the settlement is merged with the decree and becomes the final *471 judicial determination of the property rights of the parties. (Broome v. Broome (1951) 104 Cal.App.2d 148, 154-155 [231 P.2d 171].) Thus, the rules governing extrinsic fraud and mistake apply to alimony awards and property settlements incorporated in divorce decrees. (Jorgensen v. Jorgensen (1948) 32 Cal.2d 13, 18-23 [193 P.2d 728]; Cameron v. Cameron (1948) 88 Cal.App.2d 585, 595-597 [199 P.2d 443]; Hosner v. Skelly (1946) 72 Cal.App.2d 457, 461 [164 P.2d 573]; Horton v. Horton (1941) 18 Cal.2d 579, 584-585 [116 P.2d 605]; Hendricks v. Hendricks (1932) 216 Cal. 321, 323-324 [14 P.2d 83]; Godfrey v. Godfrey (1939) 30 Cal.App.2d 370, 378-380 [86 P.2d 357]; Smith v. Smith (1954) 125 Cal.App.2d 154, 161-164 [270 P.2d 613].)
Extrinsic fraud usually arises when a party is denied a fair adversary hearing because he has been “deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.” (3 Witkin, Cal. Procedure, p. 2124.) “Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client’s interest to the other side',— these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.” (United States v. Throckmorton (1878) 98 U.S. 61, 65-66 [25 L.Ed. 93, 95].)
The right to relief has also been extended to cases involving extrinsic mistake. (Bacon v. Bacon (1907) 150 Cal. 477, 491-492 [89 P. 317]; Olivera v. Grace, supra, at p. 577.) “In some cases ... the ground of relief is not so much the fraud or other misconduct of the defendant as it is the excusable neglect of the plaintiff to appear and present his claim or defense. If such neglect results in an unjust judgment, without a fair adversary hearing, the basis for equitable relief is present, and is often called ‘extrinsic mistake.’ ” (3 Witkin, Cal. Procedure, p. 2128.)
Extrinsic mistake is found when a party becomes incompetent but no guardian ad litem is appointed (Olivera v. Grace, supra, at p. 577; Dei Tos v. Dei Tos (1951) 105 Cal.App.2d 81, 84-85 [232 P.2d 873]; Winslow v. McCarthy (1918) 39 Cal.App. 337, 340 [178 P. 720]); when one party relies on another to defend (Weitz v. Yankosky (1966) 63 Cal.2d 849, 855-856 [48 Cal.Rptr. 620, 409 P.2d 700]; Roussey v. Ernest W. Hahn, Inc. (1967) 251 Cal.App.2d 251, 256 [59 Cal.Rptr. 399]); when there is *472 reliance on an attorney who becomes incapacitated to act (Jeffords v. Young (1929) 98 Cal.App. 400, 405-406 [277 P. 163]; Smith v. Busniewski (1952) 115 Cal.App.2d 124, 127-128 [251 P.2d 697]; Antonsen v. Pacific Container Co. (1941) 48 Cal.App.2d 535, 538 [120 P.2d 148]); when a mistake led a court to do what it never intended (Sullivan v. Lumsden (1897) 118 Cal. 664, 669 [50 P. 777]; Bacon v. Bacon, supra, at pp. 492-493); when a mistaken belief of one party prevented proper notice of the action (Aldabe v. Aldabe (1962) 209 Cal.App.2d 453, 475 [26 Cal.Rptr. 208]; Boyle v. Boyle (1929) 97 Cal.App. 703, 706 [276 P. 118]); or when the complaining party was disabled at the time the judgment was entered (Watson v. Watson (1958) 161 Cal.App.2d 35, 39-40 [325 P.2d 1011]; Saunders v. Saunders (1958) 157 Cal.App.2d 67, 72-73 [320 P.2d 131]; Evry v. Tremble (1957) 154 Cal.App.2d 444, 447-449 [316 P.2d 49]). Relief has also been extended to cases involving negligence of a party’s attorney in not properly filing an answer (Hallett v. Slaughter (1943) 22 Cal.2d 552, 556-557 [140 P.2d 3]; Turner v. Allen (1961) 189 Cal.App.2d 753, 757-760 [11 Cal.Rptr. 630]); and mistaken belief as to immunity from suit (Bartell v. Johnson (1943) 60 Cal.App.2d 432, 436-437 [140 P.2d 878]).[2]
Relief is denied, however, if a party has been given notice of an action and has not been prevented from participating therein. He has had an opportunity to present his case to the court and to protect himself from mistake or from any fraud attempted by his adversary. (Jorgenson v. Jorgenson, supra, 32 Cal.2d 13 at p. 18; Westphal v. Westphal (1942) 20 Cal.2d 393, 397 [126 P.2d 105]; Gale v. Witt (1948) 31 Cal.2d 362, 367 [188 P.2d 755].) Moreover, a mutual mistake that might be sufficient to set aside a contract is not sufficient to set aside a final judgment. The principles of res judicata demand that the parties present their entire case in one proceeding. “Public policy requires that pressure be brought upon litigants to use great care in preparing cases for trial and in ascertaining all the facts. A rule which would permit the re-opening of cases previously decided because of error or ignorance during the progress of the trial would in a large measure vitiate the effects of the rules of res judicata.” (Rest., Judgments, § 126, com. a.) Courts deny relief, therefore, when the fraud or mistake is “intrinsic”; that is, when it “goes to the merits of the prior proceedings, which should have been guarded against by the plaintiff at *473 that time.” (Comment, Equitable Relief From Judgments, Orders and Decrees Obtained by Fraud (1934) 23 Cal.L.Rev. 79, 83-84; see Pico v. Cohn (1891) 91 Cal. 129, 134 [27 P. 537, 25 Am.St.Rep. 159, 13 L.R.A. 336]; Hendricks v. Hendricks, supra, at pp. 323-324.)
Relief is also denied when the complaining party has contributed to the fraud or mistake giving rise to the judgment thus obtained. (Hammell v. Britton (1941) 19 Cal.2d 72, 80 [119 P.2d 333]; Rudy v. Slotwinsky (1925) 73 Cal.App. 459, 465 [238 P. 783]; Rest., Judgments, § 129.) “If the complainant was guilty of negligence in permitting the fraud to be practiced or the mistake to occur equity will deny relief.” (Wilson v. Wilson (1942) 55 Cal.App.2d 421, 427 [130 P.2d 782].)
Whether the case involves intrinsic or extrinsic fraud or mistake is not determined abstractly. “It is necessary to examine the facts in the light of the policy that a party who failed to assemble all his evidence at the trial should not be privileged to relitigate a case, as well as the policy permitting a party to seek relief from a judgment entered in a proceeding in which he was deprived of a fair opportunity fully to present his case.” (Jorgensen v. Jorgensen, supra, 32 Cal.2d 13 at p. 19.)
The evidence in the present case establishes that it is a case in which a party “failed to assemble all his evidence at the trial.” Defendant testified that he knew of the New Zealand holdings prior to the divorce and that plaintiff was receiving $640 every four months from New Zealand. In defendant’s divorce questionnaire, circulated to determine the extent of marital property holdings, expenses and income, he listed as plaintiff’s separate property “50% stock interest in David Lloyd Co., Ltd.,—a New Zealand holding corporation for many subsidiary companies (cement, coal, paper)—exact worth unknown to defendant—estimated to run into millions of dollars.” In a letter sent by defendant’s attorney to plaintiff’s attorney in which the principal points of the property settlement were summarized, defendant proposed to transfer to plaintiff “any interest he may have in her holdings in New Zealand.” Plaintiff also knew of the holdings but did not know of their value or their tax consequences. In 1957 when preparing income tax returns, an attorney, who later represented defendant in the divorce action, made some inquiry into the nature of the New Zealand income at the request of defendant. The attorney abandoned further investigation after plaintiff stated that a law firm known to defendant’s attorney had advised her that the New Zealand income was not taxable. The attorney knew that the New Zealand holdings were “sizable.” Both parties testified that the tax provision was included in the decree because of an audit being conducted by the Internal Revenue Service with respect to an unrelated transaction by defendant.
Clearly the present case does not involve the failure of one spouse to *474 disclose fully the assets to be divided upon separation. (See Taylor v. Taylor (1923) 192 Cal. 71 [218 P. 756, 51 A.L.R. 1074]; Milekovich v. Quinn (1919) 40 Cal.App. 537 [181 P. 256].) The duty to disclose arises out of the fiduciary relationship between the husband and wife. (Vai v. Bank of America (1961) 56 Cal.2d 329, 337-340 [15 Cal.Rptr. 71, 364 P.2d 247]; Jorgensen v. Jorgensen, supra, 32 Cal.2d 13 at pp. 19-21.) There is no evidence that the wife withheld any information relevant to the nature of her New Zealand income.
The factual situation in the present case is analogous to that in Jorgensen v. Jorgensen, supra. In Jorgensen the husband disclosed all known assets of the parties. The husband claimed certain assets as his separate property. The wife and her attorney accepted the husband’s statements at face value without any independent investigation. Subsequent to the divorce decree, however, they learned that some of the assets the husband claimed as separate property were actually community property, in which the wife was entitled to a one-half interest. The wife was denied the right to set aside the property settlement agreement. “If the wife and her attorney are satisfied with the husband’s classification of the property as separate or community, the wife cannot reasonably contend that fraud was committed or that there was such mistake as to allow her to overcome the finality of a judgment. . . . Plaintiff is barred from obtaining equitable relief by her admission that she and her attorney did not investigate the facts, choosing instead to rely on. the statements of the husband as to what part of the disclosed property was community property.” (Jorgensen v. Jorgensen, supra, 32 Cal.2d 13 at pp. 22-23; see also, Cameron v. Cameron, supra, 88 Cal.App.2d 585 at pp. 595-597 wherein the holding of Jorgensen was found controlling.)
In the present case both parties knew of the New Zealand assets, but the husband and his attorney chose not to investigate their taxability. The property settlement agreement expressly covered unknown tax liability. Having had full opportunity to consider all income of the wife and its concurrent tax consequences, the husband cannot now complain of the added tax burden.
The order is reversed.
Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

There was no formal property settlement agreement. All provisions of the decree relating to the distribution of property were submitted to the court on the stipulation of the parties.

The decisions in both Hallett and Bartell have been criticized. (See Comment (1943) 31 Cal.L.Rev. 600.) “The cases on intrinsic fraud, involving perjury, false documents and other reprehensible conduct by the adverse party, are far more compelling, yet relief is uniformly denied for good reason. . . . The Hallett and Bartell cases involve no true extrinsic factors in the accepted sense, and they raise serious questions as to the practical finality of any default judgment.” (3 Witkin, Cal. Procedure, p. 2130.)