[No. D032003. Fourth Dist., Div. One. May 26, 1999.]

In re MARGARITA D., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
FILIBERTO G., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*This opinion is ordered certified for publication except for parts IV. and V.

## COUNSEL

Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Kathryn E. Krug, Deputy County Counsel, for Plaintiff and Respondent.

Mitchell L. Beckloff, under appointment by the Court of Appeal, for Minor.

## OPINION

**HALLER, J.**—Filiberto G., who alleges he is the biological father of Margarita D., appeals the juvenile court's denial of his motion to set aside a previous paternity judgment that another man was Margarita's presumed father and order paternity testing to establish he is Margarita's father. Filiberto also appeals the court's denial of his Welfare and Institutions Code[1] section 388 petition seeking (1) an order declaring him to be Margarita's presumed father, (2) reunification services and physical custody of Margarita, and (3) the setting aside of a previous order placing Margarita with her maternal grandparents.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

## PROCEDURAL AND FACTUAL BACKGROUND

*Margarita's Dependency Proceedings*

Margarita was born on April 30, 1996. Her mother, Adelaida C., was at Las Colinas Detention Facility at the time of the birth, incarcerated for the death of Margarita's older brother, Giovanni G. Giovanni died on March 15, 1996, from a cardiac concussion caused by a blunt impact to his chest; he was 11 months old.

On May 2, 1996, the San Diego County Health and Human Services Agency (Agency) filed a petition under section 300, subdivision (j), alleging Margarita was at substantial risk of harm because of the nonaccidental death of her sibling.

After Margarita's release from the hospital, she was detained with Paula C., her maternal grandmother, and has lived there continuously since then.

On May 9, 1996, the juvenile court conducted a paternity inquiry. Adelaida testified she was the mother of Margarita and had not been living with any man at the time Margarita was conceived; she was living with her parents. Adelaida named Guillermo D. as the father of Margarita and had listed him as the father on Margarita's birth certificate. Adelaida testified she did not have sexual intercourse with any man other than Guillermo between July 1995 and October 1995.

Guillermo testified he believed he was Margarita's father and had told his family that she was his child. Guillermo signed a paternity admission form.

On May 9, 1996, the court made a finding Guillermo was the presumed father of Margarita and entered a paternity judgment declaring him to be Margarita's father.

Guillermo submitted to the petition, and Adelaida subsequently pled nolo contendere to the petition. Reunification services were ordered. At the 12-month review hearing, the court found there was a continued risk to Margarita if returned to parental care, reasonable services had been provided and there was no substantial probability of return to parental custody within the next 6 months. The court terminated reunification services and scheduled a selection and implementation hearing pursuant to section 366.26.

On December 18, 1997, the juvenile court identified adoption as the permanent plan for Margarita and terminated the parental rights of Adelaida and Guillermo.

*Filiberto's Paternity Claim*

In 1998, Filiberto became convinced he was Margarita's father and hired counsel to pursue the matter. According to a sworn affidavit by Filiberto:

—He and Adelaida met in early 1994, and he began living with her in February 1995. Filiberto was the father of the slain Giovanni. Filiberto and Adelaida stopped living together in August 1995.

—In October 1995, Filiberto thought Adelaida might be pregnant, but she denied it. In November 1995, Filiberto saw Adelaida with Guillermo and learned they had resumed a relationship.

—From August 1995 until December 1995, Filiberto had visited Giovanni every other week and given Adelaida money for their son. But in December 1995, Adelaida told Filiberto not to visit anymore. Filiberto last saw Giovanni in January 1996 when he brought the little boy Christmas presents.

—When Filiberto learned of Giovanni's death, he was extremely distraught and suffered from deep depression for many months.

—Filiberto first learned of Margarita's birth in May 1996 when he received a notice to participate in paternity testing. However, a social worker later telephoned him and said there was no need for the test because it had been determined that Guillermo was the father.

—In March 1998, Filiberto was shown several photographs of Margarita, which showed a resemblance between him and the girl. Filiberto saw Margarita seven or eight times in the next two months and held a birthday party for her at the maternal grandmother's residence. Filiberto gave the maternal grandmother $300 to support Margarita.

—Filiberto and Adelaida had sexual relations during Margarita's probable conception period.

—Filiberto had previously believed Guillermo was Margarita's father because (1) Guillermo had a prior relationship with Adelaida, (2) he believed Adelaida had had sexual relations with Guillermo shortly before Filiberto had moved out in August 1995 and (3) the social worker had told him in 1996 that Guillermo was the father.

On July 15, 1998, Filiberto filed a section 388 petition. Also, on that date, the maternal grandparents filed a de facto parent application, which was immediately granted by the court.

On August 13, 1998, Filiberto filed a motion for paternity testing and to set aside the paternity judgment pending paternity testing.

Filiberto's trial testimony largely matched his affidavit. Guillermo, who was provided counsel, declined to answer any questions concerning the paternity issue on Fifth Amendment grounds; however, Guillermo indicated through counsel he would be willing to undergo paternity testing.

The major factual dispute involved Filiberto's 1996 telephone conversation with Social Worker Patricia Ovando concerning paternity testing. According to Ovando's notes, the maternal grandmother expressed doubt to Ovando on June 7, 1996, about Guillermo's being the father of Margarita and said Adelaida had lived with Filiberto from March 1995 through September 1995. Ovando then consulted with her supervisor concerning paternity testing and contacted counsel about paternity testing.

Ovando's notes also showed she had a telephone conversation with Filiberto on June 14, 1996. Ovando testified she did not recall the conversation; however, she believed she did not proceed with paternity testing because her notes indicated Filiberto said he was not the father and did not see a need for paternity testing.

Filiberto testified he did not remember telling Ovando he was not Margarita's father and there was no need for the paternity test.

### The Court's Ruling

The court found there was no evidence of extrinsic fraud and therefore no ground to set aside the paternity judgment. The court observed that even if it were inclined to set aside the paternity judgment and order paternity testing and the test showed Filiberto was the father, he would merely be a biological father who had not done anything to preserve his parental rights, even though he had numerous reasons to suspect he was the father. The court said Filiberto knew Adelaida was pregnant and he could be the father, but did nothing. Filiberto was aware of the juvenile court proceedings after the baby was born, but did nothing. The court added Filiberto was not interested in a paternity test and did nothing until April 1998. The court said Filiberto had been indifferent.

The court denied the motion to set aside the paternity judgment and for paternity testing. The court also denied the section 388 motion on the ground that Filiberto had no standing to pursue it.

## DISCUSSION

### I.   *Denial of Motion to Set Aside Paternity Judgment*

■ Filiberto contends the juvenile court abused its discretion by failing to set aside the paternity judgment that Guillermo is Margarita's father because it was a product of fraud by Adelaida and Guillermo, both of whom lied to the court in 1996. The contention is without merit.

■ A party may seek relief from a final judgment by appealing to the equitable power of the court; the court, sitting in equity, can, under certain limited circumstances, set aside or modify a valid final judgment obtained by fraud, mistake or accident. As our Supreme Court explained in *Olivera* v. *Grace* (1942) 19 Cal.2d 570, 575 [122 P.2d 564, 140 A.L.R. 1328]: " '[W]here the legal judgment was obtained . . . through fraud, mistake, or accident, or where the defendant in the action, having a valid legal defense on the merits, was prevented in any manner from maintaining it by fraud, mistake, or accident, and there had been no negligence, laches, or other fault on his part, . . . then a court of equity will interfere at his suit, and restrain proceedings on the judgment which cannot be conscientiously enforced. . . . The ground for the exercise of this jurisdiction is that there has been no fair adversary trial at law.' [Citation.]" However, the only type of fraud that can be the basis of vacating a final judgment is extrinsic fraud. (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1068 [202 Cal.Rptr. 116].) As explained by our Supreme Court: "Extrinsic fraud usually arises when a party is denied a fair adversary hearing because he has been 'deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.' [Citation.] 'Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side, these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.' (*United States* v. *Throckmorton* (1878) 98 U.S. 61, 65-66 [25 L.Ed. 93, 95].)" (*Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 471 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368].) Put another way, "extrinsic fraud is one party's preventing the other from having his day in court." (*City and County of San Francisco* v. *Cartagena* (1995) 35 Cal.App.4th 1061, 1067 [41 Cal.Rptr.2d 797].)

The fraud of which Filiberto complains was not extrinsic fraud; rather, it was intrinsic fraud, which was fraud that was part of the case itself. Intrinsic fraud goes to the merits of the prior proceeding and is "not a valid ground for setting aside a judgment when the party has been given notice of the action and has had an opportunity to present his case and to protect himself from any mistake or fraud of his adversary but has unreasonably neglected to do so. [Citation.] Such a claim of fraud goes to the merits of the prior proceeding which the moving party should have guarded against at the time." (*City and County of San Francisco* v. *Cartagena, supra,* 35 Cal.App.4th at pp. 1067-1068.)

It follows that "in demonstrating extrinsic fraud, it is insufficient for a party to come into court and simply assert that the judgment was premised upon false facts. The party must show that such facts could not reasonably have been discovered prior to the entry of judgment." (*City and County of San Francisco* v. *Cartagena, supra,* 35 Cal.App.4th at p. 1068.)

In essence, Filiberto's ground for setting aside the paternity judgment is simply that it was based upon false facts supplied by Adelaida and Guillermo. That is not extrinsic fraud and it is not sufficient to set aside the judgment.

Filiberto's attempt to argue there was extrinsic fraud because he was not given notice of the dependency proceedings is unavailing. Adelaida's and Guillermo's lies at the paternity hearing did not prevent Filiberto from coming to court. Similarly, Adelaida's false denial to Filiberto that she was pregnant in October 1995 does not constitute extrinsic fraud because it did not prevent him from claiming paternity. Thus, despite Adelaida's fraudulent attempts to hide her pregnancy from Filiberto and to name Guillermo as the father, she did not prevent Filiberto from claiming paternity in 1996. Rather, Filiberto chose at that time not to pursue it.

As to Filiberto's attempt to blame the Agency for his lack of notice, it is uncontested on this record that when Social Worker Ovando learned of Filiberto's possible paternity, she contemplated having him take a paternity test. What the parties dispute is the content of the telephone conversation between Ovando and Filiberto concerning the testing. Filiberto claims Ovando told him there was no need for the test because it had been determined Guillermo was the father, while Ovando testified her notes indicated Filiberto denied being the father and said there was no need for paternity testing. In making its ruling, the juvenile court found Filiberto did not want to take the paternity test in 1996. The court, which had the opportunity to observe the witnesses testify, is better suited than a reviewing

court to make such determinations of fact. Thus, substantial evidence supported the court's implicit finding that the Agency was not at fault for the lateness of Filiberto's paternity claim. (See *In re Zacharia D.* (1993) 6 Cal.4th 435, 452-453 [24 Cal.Rptr.2d 751, 862 P.2d 751].)

Filiberto also argues unpersuasively that the paternity judgment should be set aside on the ground of mistake because the court erroneously found Guillermo to be a presumed father. Filiberto points out Guillermo did not qualify as a presumed father because Guillermo did not receive Margarita into his home and openly hold her out as his natural child. (See Fam. Code, § 7611, subd. (d).) However, the presumed father finding is not the same as the paternity judgment. Moreover, Filiberto did not challenge the presumed father finding below and he may not raise the issue on appeal for the first time. (*In re Aaron B.* (1996) 46 Cal.App.4th 843, 846 [54 Cal.Rptr.2d 27].)

The juvenile court did not abuse its discretion in refusing to set aside the paternity judgment.

## II.  *Denial of Paternity Testing*

Filiberto contends the juvenile court erred in not ordering a paternity test. The contention is without merit.

Family Code section 7636 provides a paternity judgment "is determinative for all purposes except for actions brought pursuant to Section 270 of the Penal Code."

The existence of a valid paternity judgment bars the use of blood test evidence in a subsequent proceeding to overturn a paternity determination. (*City and County of San Francisco* v. *Cartagena, supra,* 35 Cal.App.4th at pp. 1065-1069.)

In other words, for Filiberto's paternity testing request to go forward, he had to succeed in setting aside the existing paternity judgment. Having failed to do so, there was no legal ground to proceed with paternity testing.

Filiberto's reliance on statutory provisions of the Family Code regarding paternity testing is misplaced because they are only applicable in proceedings where the issue of paternity is not resolved and no final judgment of paternity has been entered. (See *De Weese* v. *Unick* (1980) 102 Cal.App.3d 100, 104 [162 Cal.Rptr. 259].)

Filiberto also claims the juvenile court erred in finding he had failed to preserve his parental rights. We disagree.

There was substantial evidence to support the court's finding. Filiberto had a longtime intimate relationship with Adelaida, and he knew he had sexual intercourse with her at or near the time of conception. In October 1995, Filiberto suspected Adelaida was pregnant based on her appearance. After Margarita was born, Filiberto was aware that the child was in the dependency system. The Agency contacted Filiberto in mid-1996 about a paternity test. Thus, by mid-1996, Filiberto had ample notice that he very well could be the biological father. Yet he did not pursue his parental rights until May 1998—almost two years later. Simply put, there is substantial evidence Filiberto failed to promptly assert and preserve his parental status; he was dilatory. We have no quarrel with the juvenile court's observation that Filiberto was indifferent to his possible paternity of Margarita. (See *In re Zacharia D., supra*, 6 Cal.4th at p. 452 [father's ignorance of child's existence was result "of his own indifference"].)

As the Supreme Court noted in *In re Zacharia D., supra*, 6 Cal.4th at page 452, the obligation to claim parenthood in a timely fashion is more important in a dependency proceeding: "While under normal circumstances a father may wait months or years before inquiring into the existence of any children that may have resulted from his sexual encounters with a woman, a child in the dependency system requires a more time-critical response. Once a child is placed in that system, the father's failure to ascertain the child's existence and develop a parental relationship with that child must necessarily occur at the risk of ultimately losing any 'opportunity to develop that biological connection into a full and enduring relationship.' [Citation.]"

Filiberto relies on *In re Julia U.* (1998) 64 Cal.App.4th 532 [74 Cal.Rptr.2d 920], in which the Court of Appeal reversed the termination of an unwed father's parental rights. The reliance is misplaced because that case is distinguishable for the following reasons: (1) As contrasted with this case where there was strong evidence that Filiberto should have realized he may have fathered Margarita, the Court of Appeal in *In re Julia U., supra*, 64 Cal.App.4th at page 541, characterized the evidence that the girl's father should have expected his sexual activity with the mother would result in her pregnancy as weak. (2) The father in *In re Julia U.* did not deny or reject his paternity (*ibid.*) while Filiberto denied his paternity when social worker Ovando contacted him about a paternity test. (3) The father in *In re Julia U., supra*, 64 Cal.App.4th at page 542, did not delay in asserting his parental interest while Filiberto did. (4) The social services agency in *In re Julia U., supra*, 64 Cal.App.4th at pages 542-543, acted unreasonably and was dilatory in locating the biological father; here, the Agency was not dilatory and did not act unreasonably, notwithstanding Filiberto's arguments to the contrary.

Simply put, Filiberto, by his actions, was not in the same shoes as the father in *In re Julia U., supra,* 64 Cal.App.4th at pages 541-542, who "[f]rom his initial contact with respondent . . . publicly expressed his desire to establish a relationship with Julia if the paternity test showed he was her biological father."

### III.   *Denial of Section 388 Motion*

Filiberto contends the juvenile court abused its discretion in denying his section 388 petition. The contention is without merit.

As indicated above, the court properly denied the motion to set aside the paternity judgment. Accordingly, the court's refusal to consider the merits of the section 388 petition was correct. "The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes except for actions brought pursuant to Section 270 of the Penal Code." (Fam. Code, § 7636.)

Because there was a valid and final paternity judgment in effect, Filiberto did not have standing to pursue a section 388 motion.

In any event, a denial of any of the rulings sought by Filiberto in his section 388 motion would not have constituted error. The section 388 motion sought an order declaring Filiberto to be Margarita's presumed father. However, even if Filiberto had proved himself to be Margarita's biological father, there was no showing he qualified as a presumed father under Family Code section 7611. Secondly, Filiberto was not entitled to the reunification services he sought in the section 388 motion. (*In re Zacharia D., supra,* 6 Cal.4th at p. 454.) As to Filiberto's request to set aside the order placing Margarita with her maternal grandparents, we note that under section 388, the proponent of the modification must show that the modification is in the best interest of the child (§ 388; Cal. Rules of Court, rule 1432(c)), and whether to grant the motion rests within the court's discretion (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1704 [11 Cal.Rptr.2d 290]). Here, Margarita has lived with her maternal grandparents since her release from the hospital after birth. The maternal grandparents wished to adopt her. A finding that it would not be in Margarita's interest to remove her from this home and place her with a man whom she barely knew would not have constituted an abuse of discretion.

### IV., V.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

*See footnote, *ante,* page 1288.

## DISPOSITION

Affirmed.

Benke, Acting P. J., and Huffman, J., concurred.