[No. A072114. First Dist., Div. Three. Apr. 26, 1999.]

Estate of LONNIE R. BEARD, Deceased.
MERLE CABLES, as Executor, etc., Petitioner and Respondent, v.
LOTTIE ANN BEARD, Objector and Appellant.

[No. A074710. First Dist., Div. Three. Apr. 26, 1999.]

Estate of LONNIE R. BEARD, Deceased.
LONNIE RICHARD BEARD III et al., Petitioners and Respondents, v.

LOTTIE ANN BEARD, Objector and Appellant.

### COUNSEL

John T. Larson; and Deborah A. Boyd for Objector and Appellant

Janssen, Malloy, Marchi, Needham, Morrison & Koshkin, Michael F. Malloy and Catherine M. Koshkin for Petitioner and Respondent Lonnie Richard Beard III.

Mathews & Kluck and Francis B. Mathews for Petitioner and Respondent Merle Cables.

### OPINION

McGUINESS, P. J.—Decedent Lonnie R. Beard died on September 11, 1986. Since that date, his heirs have fought each other unremittingly over the disposition of his estate. In these consolidated appeals, decedent's widow and pretermitted heir, appellant Lottie Ann Beard, seeks to overturn and vacate no fewer than six separate orders and decisions of the probate court. She contends that orders (1) approving the fourth annual account, (2) approving the fifth annual account, and (3) for delivery to her of an individual retirement account (IRA), as well as (4) a judgment approving and confirming the statement of decision of a special referee, are all fatally defective and must be vacated because they were in conflict with earlier

orders approving the parties' compromise and settlement agreement, and were instead based on (5) allegedly void orders setting aside the earlier orders arising from the settlement. In addition, appellant contends (6) there is insufficient evidence in the record of the actual financial condition of the estate to support or justify the probate court's most recent order granting a preliminary distribution of part of the estate. We disagree with appellant's contentions, and therefore affirm the orders appealed from.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The probate of this estate has been inordinately complicated, rivaling in its lengthy delays and convolutions the interminable chancery case of Jarndyce v. Jarndyce described by Charles Dickens in his novel Bleak House.[1] Unfortunately, as in Jarndyce, resolution of the issues raised by this appeal require this court once again to review the confusing events that have led the unhappy parties to this point.

Decedent Beard was survived by appellant and his two adult children, respondents Lonnie Richard Beard III and Jennifer A. O'Day (the Beard children). He had previously been married to Nancy Beard (the former wife). The final judgment of dissolution terminating that marriage had been entered in February 1986, and decedent married appellant soon thereafter. However, litigation was still pending with respect to the characterization and division of the property of decedent and his former wife at the time of his death. Decedent's will, which was executed in September 1985, had not been changed to take account of his new marriage. This will left decedent's entire estate to his two children in equal shares, with the exception of a specific bequest of 20 percent of the Beard Office Equipment Company (Beard Company) to Jack L. Johnson (Johnson), and named respondent Merle Cables as executor (the executor). Appellant was not mentioned in the will.

After decedent's death, appellant filed a "Petition to Determine Heirship" requesting that she be held to be a pretermitted heir and granted a family

---

[1] Charles Dickens, Bleak House (Penguin Classics ed. 1985), pages 49-55. This is not the first appeal in this matter. According to the executor, in the course of the proceedings in this probate estate there have been 24 appeals, all by this appellant, only 2 of which appeals she has actually pursued to completion. At oral argument, appellant disputed the executor's figures, asserting that she had only filed 10 appeals. Because some of these appeals were filed more than 10 years ago, and all but 2 have since been abandoned or dismissed, we can no longer verify the precise number of appeals from this court's own records. There can be no dispute, however, that whatever their actual number, all of appellant's appeals have been unsuccessful, have delayed the closing of this estate for many years, and have resulted in expense to the estate greatly reducing the funds available for distribution.

allowance before final inventory. There was no opposition to these requests, and they were granted by the probate court. In its initial preliminary distribution, the court granted the executor's request for distribution of 20 percent of the capital stock of the Beard Company to Johnson.

In October 1988, the parties undertook settlement negotiations, and a compromise (the Compromise Agreement) was reached. The parties entered into a stipulation on the record in open court (the Original Settlement), and on October 28, 1988, the court issued and filed a written "Order Approving Compromise and Settlement" (the Original Settlement Order), prepared and drafted by the executor's attorney. On November 21, 1988, appellant filed a motion to set aside the Original Settlement Order, alleging it had been obtained through extrinsic fraud and did not accurately reflect the actual agreement of the parties. Through their attorneys, the Beard children filed papers concurring with appellant that the order did not accurately reflect the parties' actual agreement in certain respects. At a hearing on December 2, 1988, counsel reached an agreement on the terms of an "Amended Order Approving Compromise and Settlement" (the Amended Order) as drafted by appellant's attorney. The Amended Order was expressly approved as to form by all parties, signed by the court and filed on that date.

Among other things, the Amended Order provided that appellant would receive "by way of partial distribution" real property known as the Wetlands, an apartment complex, an IRA at Shearson Lehman Company, and $8,000 in cash. The Wetlands and apartments were to be charged against appellant's ultimate distributive share of the estate "at their appraised value," and the amount of the IRA was to be charged against her share of the estate at 75 percent of the value of the IRA at the time of distribution. The executor was ordered to file a petition for preliminary distribution of the estate to transfer all of these assets to appellant. In addition, appellant's attorney was ordered "to prepare an order for distribution of the . . . IRA account" to appellant. In return, appellant was to (1) dismiss all of her pending appeals in the probate proceedings; (2) drop her motion for recusal of the executor's attorney; (3) dismiss her petition for a probate homestead with prejudice; and (4) expunge a lis pendens she had filed against the estate.

On December 2, 1988, pursuant to the petition of the executor's attorney and the terms of the Amended Order, the court entered an "Order for Preliminary Distribution." The Order for Preliminary Distribution (1) directed the distribution to appellant of (a) the $8,000 in cash, (b) the Wetlands and the apartments "at the value appraised by the inheritance tax referee" of $60,000 and $464,000, respectively, and (c) the IRA, charged against appellant's ultimate distributive share of the estate at 75 percent of the amount in

the account at the time of distribution; (2) ordered that each of the three heirs (appellant and the Beard children) would receive as their ultimate distributional right one-third of the net estate, adjusted for the value of the properties they received in this preliminary distribution; (3) ordered appellant to dismiss with prejudice her appeal then pending; and (4) ordered that certain personal property in appellant's possession be treated as her separate property, including an automobile, and directed the executor to dismiss with prejudice his action to recover that property.

Unfortunately, this Order for Preliminary Distribution apparently incorporated some of the language of the Original Settlement Order rather than that of the Amended Order. Consequently, among other things, the Order for Preliminary Distribution omitted mention of the December 2, 1988, date for turning over the Wetlands and the apartments to appellant. As a result, the executor settled his account of the income from the apartments to appellant as of December 16, 1988, rather than from the December 2, 1988, date specified by the Amended Order. Also on December 16, 1988, the court ordered the appointment of a court commissioner for the purpose of executing a dismissal of appellant's pending appeal before this court (*Estate of Beard*, No. A040715).

Although appellant had agreed and was ordered to dismiss all appeals pending in the estate proceedings, she did not do so.[2] Upon learning the executor had caused the dismissal of the appeal, appellant had the appeal reinstated. On February 9, 1989, she filed a motion to set aside both the Original Settlement Order and the Amended Order, alleging extrinsic fraud, based on the executor's two-week delay in accounting for the income from the apartments. The executor filed opposition to the motion. On March 7, 1989, the court ruled there was no reason to set aside the parties' previous settlement, since the only problem was their failure to execute the agreed disposition in a timely fashion. The court ordered all parties to cooperate in ending the litigation by executing the necessary documents and complying with their previous agreements on or before March 21, 1989. Appellant

[2]In her brief on appeal, appellant claims that she moved to dismiss her pending appeal before this court on April 27, 1989, pursuant to the terms of the Amended Order, and the appeal was dismissed on June 22, 1989. This is a misstatement of the record. It does appear that appellant's attorney drafted a conditional dismissal in *Estate of Beard, supra,* No. A040715 in April 1989. Several of appellant's other, subsequent appeals were dismissed on June 22. The appeal in question was in fact dismissed on April 17, 1989, for failure to file written opposition to the executor's motion to dismiss. However, appellant had the appeal reinstated, and pursued it through briefing, oral argument and decision. We issued an opinion on July 24, 1989, affirming the orders of the probate court and finding against appellant on the issues she had raised. In our opinion, we pointed out that "[t]his matter was once thought to be settled, but appellant moved to set aside the settlement agreement."

appealed that ruling, as well as both the December 2, 1988, Order for Preliminary Distribution and the December 16, 1988, order appointing a court commissioner to execute the dismissal of her pending appeal.

On June 2, 1989, the court entered an order distributing the contents of the IRA to appellant, and charging her 75 percent of the value of the IRA against her share of the proceeds of the estate. In October 1989, the Beard children petitioned the court for elimination of appellant's monthly family allowance of $2,500, on the grounds the preliminary distribution of the estate and ongoing estate and litigation-related expenses had rendered it difficult for the estate to continue making that monthly payment. Appellant opposed the request, and filed her own petition for an *increase* in her family allowance to the sum of $13,256.48 per month. By order filed April 11, 1990, the court denied both of these opposing requests that appellant's family allowance be eliminated or increased. Instead, the court ordered the executor to continue paying appellant her family allowance of $2,500 per month and to reimburse her for all delinquent amounts.

On June 15, 1990, the Beard children filed a motion to set aside the Amended Order and to withdraw from the Original Settlement, on the grounds appellant had failed to comply with the terms of the Original Settlement, the Amended Order, or the March 1989 ruling ordering the parties to terminate further litigation and comply with the terms of the Amended Order. Among other things, the Beard children argued that (1) as a result of appellant's failure to dismiss the appeal (*Estate of Beard, supra,* No. A040715) she had been required to dismiss under the Amended Order, the estate had incurred substantially more expense in the form of litigation costs; (2) the IRA had never been transferred to appellant's name, contrary to the terms of the Amended Order; and (3) appellant was using the Amended Order to claim an indefinite continuation of her family allowance, with the result she had no incentive to permit the estate to reach final settlement. The executor joined in this motion.

Appellant opposed the motion, arguing it was time-barred and frivolous as a matter of law because there was no showing of extrinsic fraud or mistake. She acknowledged she had failed to dismiss her appeal as ordered, but asserted there was no prejudice because she had lost the appeal, and "the only prejudice to the other parties would be any legal expenses incurred . . . , specifically relating to the appeal."

On August 24, 1990, the court issued a ruling appointing a special referee "to determine (1) whether [appellant's failure to dismiss] the [then pending] appeal breached the agreement; or (2) whether the [appellant's failure to

dismiss the] appeal was necessitated by the executor's actions."[3] The referee filed his report on December 4, 1990. The referee's report concluded that (1) appellant "breached" the express requirements of the Original Settlement, the Amended Order, and the court's subsequent March 1989 order to dismiss her then pending appeal; (2) appellant's failure to comply was not justified or excused by the clerical drafting error of the Order for Preliminary Distribution's omission of the December 2, 1988, date for turning over the apartments to her; and (3) appellant's procedural remedy for this drafting error was to file a motion under Code of Civil Procedure section 473 to correct the error.

The Beard children filed a motion for confirmation of the referee's report on February 28, 1991, pursuant to Code of Civil Procedure sections 639 and 644, and renewed their motion to set aside the Amended Order on the grounds of appellant's breach. Appellant opposed the motion. The court rejected appellant's objections to the appointment of the referee as untimely and therefore waived, and ordered the referee's report confirmed and adopted as the decision of the court.

On August 6, 1991, the Beard children renewed their motion to set aside the Amended Order and to withdraw from the Original Settlement, on the grounds of (1) appellant's breach of the Compromise Agreement, and (2) mutual mistake of material fact regarding the indefinite continuation of appellant's family allowance. On January 7, 1992, the court ruled that appellant had breached the parties' Compromise Agreement and Original Settlement by failing to dismiss her then pending appeal, and set aside the Amended Order on that basis. By order dated January 28, 1992, and subsequently amended on March 17, 1992, the court ordered that: (1) both the Amended Order of December 2, 1988, and the Original Settlement Order of October 28, 1988, were "rescinded as a result of the breach of said compromise by Lottie Ann Beard"; and (2) "[t]he Probate Court is free to distribute the estate without regard to the terms of the Compromise and Settlement Agreement." There was no appeal from these orders.

Meanwhile, on October 16, 1990, the executor filed a "Fourth and Interim Account and Report and Petition for Compensation for Expenses of Executor

---

[3]The court's ruling stated: "This case shows the worst possible examples of greed and mistrust. The three sides have managed to mangle a perfectly clear settlement agreement. An agreement which should have obviated any need for an appeal. An appeal was taken, dismissed, reinstated ad nauseum.

"For the court to make any sense out of which party should suffer the costs of this fiasco is not possible given the charges and countercharges. The court appoints Mr. William Carson to act as referee to determine (1) whether the appeal breached the agreement; or (2) whether the appeal was necessitated by the executor's actions."

and Attorney" (the Fourth Account). The Fourth Account reported on the status of the estate, including the information that regular and extraordinary fees in the total amount of $244,311.19 had been paid to the executor and the executor's attorney. On July 2, 1992, the executor filed a "Fifth and Final Account and Report and Petition for Allowance of Compensation for Executor and Attorney and Payment of Expenses and to Surcharge Interest of Distributees" (the Fifth Account). This final accounting reflected the court's intervening order rescinding the Amended Order and directing that the probate court could distribute the estate without regard to the terms of the Original Settlement. Thus, the Fifth Account included as assets of the estate certain items of property that the Amended Order had previously confirmed to appellant, including furniture and the automobile, the IRA account, the apartments, and the Wetlands; and placed higher monetary values on these items for purposes of ultimate distribution than they had previously been given. Appellant filed objections to both the Fourth and the Fifth Accounts.

On October 29, 1992, the executor filed a motion "to set aside and annul portions of the Order for Preliminary Distribution entered on December 2, 1988," on the grounds the court's orders of January and March 1992 had already set aside the terms of the Original Settlement and Amended Order upon which the Order for Preliminary Distribution "was predicated." Specifically, the executor asked that the court (1) charge appellant's estate share (a) $75,500 for the Wetlands, rather than the $60,000 value set by the Order for Preliminary Distribution, (b) $500,000 for the apartments, rather than $464,000 as previously set, and (c) 100 percent of the amount of the IRA rather than the 75 percent, as earlier ordered; and (2) permit the executor to proceed with his recovery from appellant of the personal property, including the automobile, previously settled to her as her separate property. On December 17, 1992, after receiving opposition from appellant, the court entered a ruling granting the motion to set aside the December 2, 1988, "compromise agreement" and ordering the parties to "return all assets they have received to the estate."[4]

In January 1993, the executor filed a motion to schedule a hearing on a citation for disclosure of concealed assets, to recover the decedent's personal property in appellant's possession or its value. According to the executor's

---

[4]The court's December 17, 1992, ruling states: "The motion to set aside has, at various times, been argued for by both Mrs. Beard and the other parties. The motion is granted as to Lottie Beard and Mr. Malloy's clients [the Beard children]. They shall return all assets they have received to the estate; the December 2, 1988 compromise agreement is set aside."

This "ruling" on the executor's motion to set aside portions of the December 2, 1988, Order for Preliminary Distribution is somewhat ambiguous. The ruling never specifically refers to the Order for Preliminary Distribution itself; instead it refers to the "December 2, 1988 compromise agreement." This presumably was an oversight by the trial court. The record does not contain any subsequent order entered on the ruling, which itself was never appealed.

motion, this personal property rightly belonged to the decedent's former wife under the terms of a settlement between the former wife and the estate. Appellant opposed the motion, arguing that the December 2, 1988, Order for Preliminary Distribution had ordered the executor to dismiss the citation.[5] The citation was set for hearing in March 1993, but then delayed while the parties attempted to settle their disputes. At a hearing on August 26, 1993, appellant informed the court she was relieving her attorney from representing her, requested a continuance, and complained generally that the proceedings in the estate were unfair to her. At that point, the trial judge who had presided at most of the probate of the estate disqualified himself from any further proceedings in the matter of the Beard estate.[6] Thereafter, the executor, joined by the Beard children, sought the appointment of a receiver to recover the personal property held by appellant and attempt to bring the estate to final distribution.

---

[5]Appellant contends the personal property which was the subject of this January 1993 "citation" was the same as the personal property the trial court had previously given to appellant under the December 2, 1988, Amended Order. It is not clear from the record whether this statement is accurate, however. The December 2, 1988, Order for Preliminary Distribution ordered the executor to dismiss with prejudice his citation against appellant with respect to personal property in her possession, specifically saying that "this shall include the Plymouth automobile which shall be treated as the separate property of [appellant] Lottie Ann Beard, the same being a gift from the decedent." The word "Plymouth" was handwritten into the order. However, the executor's January 1993 motion to schedule the citation for hearing refers to a "Mercedes Benz automobile which the executor understands has now been destroyed by [appellant] Lottie Beard." In the subsequent statement of decision by the special referee appointed to resolve the personal property issues, *three* automobiles were identified: a Plymouth, an Audi, and a Honda. The record does not permit us to determine precisely how many different automobiles are in issue, or whether there was a typographical error in one of these documents. In any event, the terms of the December 2, 1988, Amended Order were presumably set aside on the motions of the executor and the Beard children on January 28, 1992, and again in the amended order of March 17, 1992. As mentioned, there was no appeal from these orders.

[6]At the August 26, 1993, hearing, the following colloquy took place between the trial court and appellant: "Ms. BEARD [appellant]: . . . [¶] I have very little income and I have not got income from the apartments. They keep saying I have to give everything back. If I have to give everything back then I assume I have to give back the income from the apartments. . . . My allowance now has been discontinued.

"THE COURT: Ma'am, there is going to be a situation—I am trying to get this case settled and the problem is the [family] allowance can go on as long as there is money in the estate.

"Ms. BEARD: There was money in the estate.

"THE COURT: I . . . am disqualified in this case. It has been before me so long I can't even remember what is going on. I am disqualifying myself. I can't believe—you are going to end up, ma'am with no money. You are going to continue to fight over something that should have been settled five years ago. You can continue to fight until you die if you want to. It is not in me any more to worry about what happens to this mess. I am sorry. It will be returned to the master calendar clerk for setting before a judge that can try to straighten out all of the mess that has occurred.

"MR. HEALEY [appellant's former counsel]: Your Honor, I presume I am out.

"THE COURT: You are relieved, yes.

"MR. HEALEY: Thank you, your Honor."

On December 13, 1993, the court, through a different trial judge, appointed a second special referee pursuant to Code of Civil Procedure section 639 to determine outstanding issues between appellant and the other parties. On March 3, 1994, the special referee filed a statement of decision, determining that the personal property properly belonging to the estate in appellant's possession was worth $30,016.74. The special referee recommended that sum be deducted from appellant's ultimate distributive share of the estate. On March 9, 1994, the executor moved to confirm the referee's statement of decision, to enter judgment thereon, and to order appellant to turn over the IRA or else be charged with its full value against her distributive share of the estate. The executor pointed out that appellant had previously been ordered to deliver possession of the IRA to the executor following the orders setting aside the Amended Order. In addition, the executor asked the court to sign orders approving the Fourth and Fifth Accounts.

Thereafter, the executor, supported by the Beard children, continued attempting to bring the probate of the estate to completion based on the orders setting aside the Original Settlement and the Amended Order, and the special referee's statement of decision. Appellant opposed these efforts, arguing that: (1) the Wetlands, the apartments, the IRA, and the personal property in her possession had already been distributed to her pursuant to the December 2, 1988, Order for Preliminary Distribution; (2) the Order for Preliminary Distribution was final and binding; and (3) the Fourth and Fifth Accounts, the special referee's report and decision, and the motions to deliver the IRA to the estate were all void as contrary to the Order for Preliminary Distribution. On September 19, 1994, and December 15, 1994, the trial court denied the executor's request that the IRA be delivered to the estate, but ordered appellant not to cash, transfer, or otherwise dispose of the IRA pending further order.

At a hearing on November 10, 1994, on confirmation of the special referee's report, the status of the IRA, and approval of the Fourth and Fifth Accounts, appellant argued through her new attorney that the December 2, 1988, Order for Preliminary Distribution was never set aside or rescinded, and was therefore final, valid and of full force and effect. The court took the question under submission. The parties submitted extensive further briefing on this issue. At a hearing on January 31, 1995, counsel for the executor recited for the court the lengthy and convoluted history of the probate. Counsel for appellant again argued that the Order for Preliminary Distribution of December 2, 1988, was a final order, and that the subsequent orders in 1992 rescinding the Original Settlement and the Amended Order were void and of no effect on the Order for Preliminary Distribution. On May 5, 1995, the trial court denied the motion to return the IRA, finding it was "not

clear" that either (1) the orders setting aside the Original Settlement and Amended Order had also set aside the June 2, 1989, order distributing the IRA to appellant at a charge against her distributive share of the estate of 75 percent of its value; or (2) recovery of the IRA by the estate was necessary to equalize the distribution.

Thereafter, the executor sought entry of orders approving the Fourth and Fifth Accounts, distributing the IRA to appellant as a portion of her one-third share of the estate, and confirming the special referee's decision with regard to the personal property in appellant's possession. Appellant objected and opposed the motion.

On August 12, 1995, the court entered the three orders and one judgment at issue in this appeal. First, the court entered its judgment approving and confirming the special referee's statement of decision, determining that appellant had concealed assets of the estate in the total value of $30,016.74, and ordering that her distributive share of the estate be reduced by that sum, plus the costs and expenses incurred by the executor and other heirs in the hearings before the referee. Second, the court entered orders approving the Fourth and Fifth Accounts. Finally, the court entered an order confirming the IRA to appellant as a distributable portion of her one-third share of the estate "at the value dated May 5, 1995."

On October 19, 1995, the Beard children filed a verified petition for preliminary distribution, pursuant to Probate Code section 11621, subdivision (a).[7] Among other things, the petition stated that federal and state estate taxes previously paid by the estate "were charged equally to each of the two" adult Beard children, and that appellant's share of the estate was not subject to either federal of estate tax because of the marital deduction. The petition asked that estate tax refunds, together with interest be distributed to the Beard children in equal shares. The petition stated the total value of the estate, as of the Fifth Account filed in July 1992, was $502,909; and that "[a]ll creditors claims have been paid." Finally, the petition stated that the Beard children "are informed and believe and thereon allege that if this Petition for Preliminary Distribution is granted, there will be ample assets in the estate subsequent to the distribution to secure the payment of any remaining taxes, claims, and expenses of administration," and asked the court to "dispense with the furnishing of a bond" by the Beard children.

Appellant objected to the petition, contending that the Fifth Account was three years out of date and was the subject of a pending appeal; and that the

---

[7]Probate Code section 11621, subdivision (a), provides: "The court shall order distribution under this article if at the hearing it appears that the distribution may be made without loss to creditors or injury to the estate or any interested person."

true financial condition of the estate was presently unknown. A hearing was held on November 3, 1995. On April 29, 1996, the court issued an order granting the Beard children's request for preliminary distribution of $72,732.25 to each, upon their both filing bonds in the sum of $72,500 pursuant to Probate Code section 11622, subdivision (b).[8] The court found (a) the allegations of the petition were true; (b) the estate "is but little indebted"; (c) the amount requested to be distributed represented the estate tax refund, together with interest; and (d) although the estate was "not in a condition to be fully closed and distributed," the amount requested could be distributed "without loss to the creditors or the estate or any person interested in the estate," because of the protection provided by the bond requirement.

Appellant now appeals in No. A072114 from the orders and judgment of August 12, 1995, arguing they were all fatally defective and must be vacated because they are in conflict with the December 2, 1988, Amended Order and Order for Preliminary Distribution, and were dependent on the assertedly void orders setting aside the Amended Order and Original Settlement. In the second appeal, No. A074710, appellant maintains there is insufficient evidence in the record to support the probate court's April 29, 1996, order granting a preliminary distribution of part of the estate.

## II. Present Juridical Status of Contested Probate Court Orders

Although appellant has appealed in No. A072114 from four separate orders (one of them denominated a "judgment" upon the special referee's statement of decision), her briefs give little attention to the merits of those orders themselves. The real substance of this appeal is appellant's dual contention that (1) the several 1992 orders setting aside and "rescinding" the Amended Order and Original Settlement were entered without jurisdiction and are therefore void, and (2) the December 2, 1988, Order for Preliminary Distribution is a final order still in full force and effect at the present time. Based on these premises, appellant urges that the correct template for distribution of the estate remains what was set out in the various 1988 orders entered pursuant to the parties' short-lived Original Settlement and Compromise Agreement.

### A. *December 2, 1988, Order for Preliminary Distribution*

■ Of appellant's two underlying contentions, the easiest to address is her assertion that the December 2, 1988, Order for Preliminary Distribution

---

[8]Probate Code section 11622 provides in pertinent part: "(b) If the court orders distribution after four months have elapsed after letters are first issued to a general personal representative, the court may require a bond. The bond shall be in the amount the court orders.

"(c) Any bond required by the court shall be given by the distributee and filed with the court. The bond shall be conditioned on payment of the distributee's proper share of the debts of the estate, not exceeding the amount distributed."

is still in effect and takes precedence over all subsequent orders in this case. This contention is based on the fact that none of the various orders setting aside the parties' Original Settlement and Amended Order have explicitly set aside the Order for Preliminary Distribution entered and filed on December 2, 1988, the same day as the Amended Order.

Even a cursory examination of the relevant orders clearly indicates that in its rulings and orders of January 7, January 28, and March 17, 1992, on the Beard children's motion to set aside the Amended Order, the trial court explicitly intended to set aside the parties' Original Settlement and the Amended Order in their *entirety*, in order thereby to leave the probate court completely free to distribute the estate without any regard whatsoever to the terms of the Original Settlement and Amended Order based on it.[9] The Amended Order itself had expressly ordered the executor to "file a petition for preliminary distribution in the estate" consistent with the terms of the parties' Original Settlement as set out and confirmed in the Amended Order. In compliance with that directive, the executor had the same day submitted and filed the Order for Preliminary Distribution, although signed by a different judge. The Order for Preliminary Distribution largely replicated the terms of the Amended Order, despite incorporating some of the language of the Original Settlement Order. In subsequently setting aside (or "rescinding") *both* the Original Settlement Order *and* the Amended Order pursuant to which the Order for Preliminary Distribution had been drafted, submitted and entered, the court necessarily set aside sub silentio the entire basis for the Order for Preliminary Distribution as well.

---

[9]The court's January 7, 1992, ruling states: "The parties agreed to settle this case on October 27, 1988. The referee's report establishes the fact that Ms. Beard did not dismiss the appeal as required.

"Under *Gregory* v. *Hamilton* (1988) 77 [Cal.App.3d] 213 [142 Cal.Rptr. 563] and *Ke[e]ling* v. *Sheet Metal Workers International Assoc.* (9th Cir. [1991] 937 F.2d 408], the amended order approving compromise and settlement is set aside due to the breach by Ms. Beard. The probate court will be free to distribute the estate absent the constraint of the compromise and settlement agreement."

On January 28, 1992, the court entered its order regarding motion to withdraw from settlement in accordance with this ruling of January 7, 1992. On March 17, 1992, the court entered an "Amended Order Re: Motion to Withdraw from Settlement" to correct a typographical error in the January 28 order. In pertinent part, the new amended order states: "Upon reviewing the Declarations filed in support and opposition to the Motion, the moving and opposing papers, the report of the referee and satisfactory proof having been made, and good cause appearing, it is ordered that:

"1. The Amended Order Approving Compromise and Settlement filed on December 2, 1988, and the Order Approving Compromise and Settlement filed on October 28, 1988, [are] hereby rescinded as a result of the breach of said compromise by Lottie Ann Beard.

"2. The Probate Court is free to distribute the estate without regard to the terms of the Compromise and Settlement Agreement."

This was not the last time the court manifested its intent to set aside the December 2, 1988, Order for Preliminary Distribution, moreover. The executor's October 1992 motion to amend and set aside or annul "certain portions" of the Order for Preliminary Distribution was premised on the fact that order was "predicated" on the Original Settlement Order and the Amended Order, and had therefore already been *implicitly* annulled by the court's January and March 1992 orders *explicitly* setting aside both the Original Settlement Order and the Amended Order. In response, the court issued its December 17, 1992, "ruling" granting the executor's motion. Inexplicably, this ruling referred to the motion it was granting as one to set side the December 2, 1988, "compromise agreement." Nevertheless, in ordering the parties to "return all assets they have received to the estate" the court clearly revealed its intent to set aside the December 2, 1988, Order for Preliminary Distribution, which was not only the actual subject of the motion and the *only* order ultimately derived from the parties' Original Settlement Order that had not yet been explicitly set aside, but was also the one court order that specifically effected a transfer of estate assets to or between the parties.

In order to conclude the trial court did *not* intend to set aside the Order for Preliminary Distribution in at least one of these orders issued in 1992, it would be necessary to assume *both* that the various orders explicitly setting aside the Original Settlement Order and the Amended Order were intended to have no effect whatsoever on the Order for Preliminary Distribution that had been issued *in compliance with* those earlier orders; *and* that in granting the executor's subsequent October 1992 motion to set aside the Order for Preliminary Distribution, the trial court intentionally ignored the entire substance of the very motion it was granting. For this court to accept appellant's argument on this point would constitute an egregious exaltation of form over substance. We therefore conclude the trial court intended to and in fact did set aside the December 2, 1988, Order for Preliminary Distribution in its several set-aside orders of 1992.

B. *Validity of Orders Annulling the Original Settlement and Compromise Agreement*

■ The remaining and corollary issue concerns the validity of the several 1992 orders in which the probate court set aside its earlier December 1988 orders arising from the parties' Original Settlement and Compromise Agreement, including the Original Settlement Order, the Amended Order and (by implication) the Order for Preliminary Distribution. Appellant did not appeal *any* of these 1992 set-aside orders at the time they were entered or before the statutory time for appeal had expired. She nevertheless argues that, despite their finality, the set-aside orders may themselves be challenged on the grounds they were entered without jurisdiction and are therefore void.

Appellant's argument is premised on the following assertions: (a) both the Amended Order and Order for Preliminary Distribution were appealable orders which became final on May 31, 1989, six months after their entry on December 2, 1988; (b) once they became final, the probate court could not set them aside except in the exercise of its equity jurisdiction; (c) no equitable grounds, such as voidness, extrinsic fraud or mistake, were argued or demonstrated to justify setting aside the Amended Order and Order for Preliminary Distribution; and (d) the several court orders entered in 1992 purporting to set aside or annul the earlier Amended Order and Order for Preliminary Distribution were themselves therefore void on their face, and subject to collateral attack at any time. As an additional ground for asserting the jurisdictional invalidity of the subject 1992 set-aside orders, appellant urges that they were based on an illegal delegation of judicial authority to a referee.

The Beard children and the executor based their motions to set aside the Amended Order and withdraw from the Original Settlement on appellant's failure to comply with the terms of the Compromise Agreement, in which she had promised to dismiss her then pending appeal and litigation. Respondents argued that by failing to comply with this provision of the Original Settlement, as incorporated in both the Amended Order and the Order for Preliminary Distribution, appellant had violated the terms of the court's orders, including the March 1989 ruling ordering the parties to terminate further litigation and comply with the terms of the earlier Amended Order; undermined the parties' intentions in entering into the Compromise Agreement and the Original Settlement; and deprived respondents of an opportunity to litigate their claims to the estate. Appellant's breach of the terms of the parties' Original Settlement and her violation of the subsequent court orders had resulted in the estate incurring significant expense and litigation costs, the seemingly indefinite continuation of appellant's family allowance, the elimination of any incentive for appellant to stop litigating and permit the estate to reach final distribution, and the resulting diminution of the estate itself.

In opposing respondents' motions, appellant admitted she had failed to dismiss her appeal as ordered and that respondents had been prejudiced thereby because of the additional legal expense they had incurred. The only "justification" appellant has ever offered for her failure to comply with the directive that she dismiss her appeal has been the executor's two-week delay in accounting for the income from her apartments. As appellant necessarily acknowledges, her argument on this point did not prevail before this court; she lost the appeal. In March 1989, the probate court specifically ruled there was no justification whatsoever for appellant's failure to comply with her

obligations under the Original Settlement and the Amended Order, and ordered her to cooperate with the other parties in ending the litigation. Even that ruling became the subject of another of appellant's seemingly endless unsuccessful appeals.

On August 24, 1990, the probate court issued its ruling appointing a special referee to determine the question whether appellant's failure to dismiss the then pending appeal breached the Compromise Agreement and Original Settlement, or was instead necessitated by the executor's actions. The referee concluded that appellant had indeed breached the express terms of parties' Compromise Agreement and Original Settlement and had violated the court's Amended Order and subsequent March 1989 order to dismiss her then pending appeal; and that this violation was completely unjustified. Her asserted justification for her failure to dismiss the appeal amounted to no more than a clerical drafting error in the Order for Preliminary Distribution's omission of the December 2, 1988, date for turning over the apartments to her, which could have been summarily corrected by means of a procedural motion under Code of Civil Procedure section 473. In response to respondents' subsequent motion to set aside the Amended Order and to withdraw from the Original Settlement, the probate court adopted the referee's findings, ruled that appellant had breached the parties' Compromise Agreement and Original Settlement by failing to dismiss her then pending appeal, and set aside the Amended Order on that basis, ruling that the court would be "free to distribute the estate without regard to the terms of the Compromise and Settlement Agreement." Significantly, appellant *did not appeal* from these orders, which are therefore final.

By now it should be clear that, if there is any one thing that has been definitely determined as a matter of law in this convoluted case, it is that appellant had *no justification* for her failure to dismiss her then pending appeal in compliance with the terms of the Original Settlement and the Amended Order based thereon. Appellant nevertheless argues the probate court's action in setting aside the Amended Order was in excess of its equitable jurisdiction because it was not based on any showing of extrinsic fraud or mistake. Appellant's argument on appeal conveniently ignores both the equitable nature of these proceedings in probate and the record itself, which shows the court was well aware of the equitable limitations on its jurisdiction to reconsider its previous orders and did not undertake to review those orders lightly or without a comprehensive analysis of the surrounding circumstances.

As an incident of its function of settling the estates of deceased persons and passing upon final accounts, a court sitting in probate has

continuing jurisdiction to determine any questions arising from controversies over the administration of estate property, in order to prevent fraud and waste. (*Estate of Gilmaker* (1962) 57 Cal.2d 627, 630 [21 Cal.Rptr. 585, 371 P.2d 321]; *Estate of Auslender* (1960) 53 Cal.2d 615, 623-626 [2 Cal.Rptr. 769, 349 P.2d 537]; *Estate of Hensel* (1956) 144 Cal.App.2d 429, 435-436 [301 P.2d 105]; Prob. Code, § 800.) In this case, moreover, the court had continuing jurisdiction over the subject matter of the parties' dispute not only as a function of its probate obligation to control the proceedings before it and thereby protect the integrity of the estate, but in order to enforce the terms of the parties' Compromise Agreement and Original Settlement. (*Gopal* v. *Yoshikawa* (1983) 147 Cal.App.3d 128, 131-133 [195 Cal.Rptr. 36]; Code Civ. Proc., § 664.6).[10] "When parties to litigation appear before the court and advise it that the controversy has been settled and the terms thereof, courts must have the ability to enforce those agreements. This is necessary not only to control the proceedings before the court, but also to protect the interests of parties who may have materially altered their positions in reliance on the settlement." (*Gopal* v. *Yoshikawa, supra,* 147 Cal.App.3d at p. 132.)

Here, only part of the disputes between the parties was resolved by the Original Settlement and Compromise Agreement. The probate proceedings in this estate did not cease (and were not intended to cease) with the parties' original settlement of these aspects of their disputes, and all the parties remained subject to the continuing jurisdiction of the probate court. The Beard children materially altered their position in reliance on their expectation that appellant would comply with the terms of the Compromise Agreement, obey the Amended Order, and dismiss her pending appeal and litigation against the estate. By not complying, appellant unreasonably prolonged the litigation, frustrated the intent of the parties in entering the compromise and settlement, and significantly depleted the estate itself, both by causing additional litigation expense and by indefinitely prolonging her claims of a family allowance. In taking action to protect the parties' expectations arising from the Original Settlement, the court was well within its equitable jurisdiction both as a court sitting in probate and by virtue of its continuing jurisdiction over the parties' settlement.

Moreover, the court did not lack jurisdiction to set aside the Amended Order and the Order for Preliminary Distribution even when considered from

---

[10]Code of Civil Procedure section 664.6 provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

the narrower parameters applicable to setting aside a final order as to which the time for appeal has passed. ■ As appellant correctly argues, in general once the time for appealing an order or judgment has passed, a court may only set aside or modify the order or judgment if the judgment is void on the face of the record, or on the basis of its equitable jurisdiction to correct extrinsic fraud or mistake. (See cases collected in 8 Witkin, Cal. Procedure (4th ed. 1997) Attack on Judgment in Trial Court, §§ 214, 222-223, 231, 237-238, pp. 718-719, 726-728, 741-742, 751-753.) A court sitting in probate is a court of general jurisdiction possessing the same power and authority with respect to its proceedings as any superior court. (Prob. Code, § 800;. 8 Witkin, Cal. Procedure, *supra*, Attack on Judgment in Trial Court, § 217, p. 721.) It is now well established that a probate court has the power to void a consent judgment or set aside any of its prior orders, even though final, on the ground of extrinsic fraud or mistake. (*Estate of Auslender, supra,* 53 Cal.2d at p. 626 & fn. 1.)

■ Extrinsic fraud is a broad concept that tends to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing. (*In re Marriage of Modnick* (1983) 33 Cal.3d 897, 904-905 [191 Cal.Rptr. 629, 663 P.2d 187]; *In re Marriage of Park* (1980) 27 Cal.3d 337, 342 [165 Cal.Rptr. 792, 612 P.2d 882].) Generally, it arises when one party has in some way fraudulently been prevented from presenting his or her claim or defense. (*In re Marriage of Modnick, supra,* 33 Cal.3d at p. 905; *Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 470-471 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368].) "No abstract formula exists for determining whether a particular case involves extrinsic, rather than intrinsic, fraud. 'It is necessary to examine the facts in the light of the policy that a party who failed to assemble all his evidence at the trial should not be privileged to relitigate a case, as well as the policy permitting a party to seek relief from a judgment entered in a proceeding in which he was deprived of a fair opportunity fully to present his case.' [Citation.]" (*In re Marriage of Modnick, supra,* 33 Cal.3d at p. 905.) Extrinsic fraud includes a false promise of compromise that induces a party to act or refrain from acting in such as way as to deprive that party of a fair opportunity to litigate his or her case. (*United States* v. *Throckmorton* (1878) 98 U.S. 61, 65-66 [25 L.Ed. 93, 95]; *Estate of Sanders* (1985) 40 Cal.3d 607, 614 [221 Cal.Rptr. 432, 710 P.2d 232]; *In re Marriage of Modnick, supra,* 33 Cal.3d at pp. 903-910; *Flood* v. *Templeton* (1907) 152 Cal. 148, 157 [92 P. 78]; *In·re Marriage of Brennan* (1981) 124 Cal.App.3d 598, 604-607 [177 Cal.Rptr. 520].) A finding of extrinsic fraud does not require that a party actually be physically prevented from appearing at a conference or hearing, as long as the fraudulent promise to settle or drop a litigated matter causes the party to forego an opportunity to prosecute or contest a case, or to be deprived of a fair hearing. (*Id.* at p.

606; 8 Witkin, Cal. Procedure, *supra*, Attack on Judgment in Trial Court, § 229, pp. 734-738.)

██ Extrinsic fraud is not the only basis for granting equitable relief from a judgment otherwise final and conclusive. In certain cases, the ground of relief is not so much fraud or misconduct as it is a party's excusable *mistake* that results in that party's failure to litigate a claim or defense. Like extrinsic fraud, extrinsic mistake must result in the entry of an unjust judgment without a fair adversary hearing. (*Kulchar* v. *Kulchar, supra,* 1 Cal.3d at pp. 471-473; *Steven W.* v. *Matthew S.* (1995) 33 Cal.App.4th 1108, 1113-1114 [39 Cal.Rptr.2d 535]; *In re Marriage of Baltins* (1989) 212 Cal.App.3d 66, 83 [260 Cal.Rptr. 403]; *Aheroni* v. *Maxwell* (1988) 205 Cal.App.3d 284, 292-293 [252 Cal.Rptr. 369]; 8 Witkin, Cal. Procedure, *supra*, Attack on Judgment in Trial Court, § 231, pp. 741-742.) Equitable relief from an order or judgment otherwise final may be granted on this theory where the aggrieved party has been unable to make a case of extrinsic fraud, but has shown excusable neglect, hardship or other grounds for the failure to press a claim or defense. Among other things, where a party has refrained from litigating a claim or defense in reliance on some agreement or promise to act or refrain from acting, which promise is subsequently breached, such reliance may establish a case of excusable extrinsic mistake. (*Weitz* v. *Yankosky* (1966) 63 Cal.2d 849, 855-856 [48 Cal.Rptr. 620, 409 P.2d 700]; *Desper* v. *King* (1967) 251 Cal.App.2d 659, 662-664 [59 Cal.Rptr. 657]; *Roussey* v. *Ernest W. Hahn, Inc.* (1967) 251 Cal.App.2d 251, 255-257 [59 Cal.Rptr. 399]; *Shields* v. *Siegel* (1966) 246 Cal.App.2d 334, 338-340 [54 Cal.Rptr. 577]; *Davis* v. *Davis* (1960) 185 Cal.App.2d 788, 791-794 [8 Cal.Rptr. 874]; 8 Witkin, Cal. Procedure, *supra*, Attack on Judgment in Trial Court, §§ 231, 233, pp. 741-742, 744-746.)

██ In this case, the probate court was within its own broad equitable jurisdiction in concluding that appellant's actions in entering into the Compromise Agreement, promising to dismiss her then pending appeal and litigation against the estate, and then subsequently breaching this promise and repeatedly violating the court's orders that she comply, either constituted an extrinsic fraud on the other parties or directly resulted in their excusable extrinsic mistake in relying on her promises. Either of these conclusions justified the probate court in setting aside the terms of the Original Settlement and Amended Order. Appellant's false promise of compromise unfairly caused the Beard children to forego an opportunity to contest appellant's claims on the estate by inducing them to enter into a settlement arguably less advantageous to themselves. Because the 1988 Amended Order and Order for Preliminary Distribution were obtained and entered under circumstances of extrinsic fraud or mistake that prevented a

fair adversary hearing, those orders were not entitled to the usual conclusive effect given to judgments or orders as to which the time for appeal has expired. (Prob. Code, § 800; *Kulchar* v. *Kulchar, supra,* 1 Cal.3d at pp. 470-473; *Estate of Auslender, supra,* 53 Cal.2d at p. 626, & fn. 1; *In re Marriage of Brennan, supra,* 124 Cal.App.3d at pp. 604-607; 8 Witkin, Cal. Procedure, *supra,* Attack on Judgment in Trial Court, §§ 214-217, pp. 718-721.) We conclude the trial court was within its equitable jurisdiction as a court sitting in probate in setting aside, vacating and annulling its prior orders entered pursuant to the parties' Compromise Agreement and Original Settlement.

Appellant emphasizes that neither the Beard children nor the executor clearly raised extrinsic fraud or extrinsic mistake as a ground for setting aside the Amended Order or the Order for Preliminary Distribution. In stating the grounds for its orders setting aside the Amended Order and, by implication, the Order for Preliminary Distribution, the probate court itself referred only to appellant's "breach" of the terms of the parties' Compromise Agreement and Original Settlement. On this basis, appellant urges the set-aside orders are void on their face, and subject to collateral attack despite her own failure to appeal from those orders.

■ If the *decision* of a lower court is correct on any theory of law applicable to the case, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the lower court reached its conclusion. The rationale for this principle is twofold: (a) an appellate court reviews the *action* of the lower court and not the reasons given for its action; and (b) there can be no prejudicial error from erroneous logic or reasoning if the decision itself is correct. "The fact that the action of the court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety; than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117]; see also *Western Mutual Ins. Co.* v. *Yamamoto* (1994) 29 Cal.App.4th 1474, 1481 [35 Cal.Rptr.2d 698] [". . . the appellate court should affirm the judgment of the trial court if it is correct on any theory of law applicable to the case, including but not limited to the theory adopted by the trial court"]; *Superior Motels, Inc.* v. *Rinn Motor Hotels, Inc.* (1987) 195 Cal.App.3d 1032, 1055 & fn. 13 [241 Cal.Rptr. 487]; *El Centro Grain Co.* v. *Bank of Italy, etc.* (1932) 123 Cal.App. 564, 567 [11

P.2d 650] [". . . it is judicial action and not judicial reasoning which is the subject of review"]; 9 Witkin, Cal. Procedure, *supra*, Appeal §§ 340-342, 406, pp. 382-385, 457-458.)

Thus, a trial court decision will be upheld even where it is based on an incorrect rule of law, as long as a sound legal basis for the decision exists. (*Aheroni* v. *Maxwell, supra,* 205 Cal.App.3d at p. 292; *People* v. *Evans* (1967) 249 Cal.App.2d 254, 257 [57 Cal.Rptr. 276]; *El Centro Grain Co.* v. *Bank of Italy, etc., supra,* 123 Cal.App. at p. 567; 9 Witkin, Cal. Procedure, *supra,* Appeal, § 342, pp. 384-385.) In short, we will affirm a judgment or order if it is correct on any theory of law applicable to the case, even if it is right for the wrong reasons. ■ Because in this case there was a sound basis in both law and equity for the orders of the trial court setting aside the Amended Order and Order for Preliminary Distribution, we affirm those orders despite the trial court's failure clearly to specify the proper grounds for its decision.

### C. *Validity of Referral of Issues to Referee*

■ Finally, appellant contends as an additional ground for the invalidity of the probate court's 1992 set-aside orders that they were based on an improper referral of issues of law to a referee. Once again, appellant's contention misses the mark.

■ Under Code of Civil Procedure section 639, a trial court may, without the consent of the parties, make a special reference to a referee to make certain factual determinations.[11] The scope of a nonconsensual special reference is limited to the resolution of particular factual questions on existing controversies. The referee's factual findings are advisory recommendations only, and do not become binding unless adopted by the court. Although the trial court must independently consider the referee's findings before acting, the referee's recommendations are entitled to great weight. (*Kim* v. *Superior Court* (1998) 64 Cal.App.4th 256, 259-261 [75 Cal.Rptr.2d 468]; *Ruisi* v. *Thieriot* (1997) 53 Cal.App.4th 1197, 1208-1211 [62 Cal.Rptr.2d 766].) Disobedience of any lawful judgment, order or process of court is a form of contempt of court. (Code Civ. Proc., § 1209, subd. (a) 5.) ■ In this case, the trial court, on its own motion, made a special reference of the factual questions whether or not appellant had disobeyed the

---

[11]Code of Civil Procedure section 639 provides in pertinent part: "When the parties do not consent, the court may, upon the application of any party, or of its own motion, direct a reference in the following cases:

". . . . . . . . . . . . . . . . . . . . . . .

"(c) When a question of fact, other than upon the pleadings, arises upon motion or otherwise, in any stage of the action.

"(d) When it is necessary for the information of the court in a special proceeding."

Amended Order by failing to dismiss her then pending appeal; and, if so, whether her failure to dismiss was necessitated by acts or omissions of the executor. The fact that both the trial court and the referee referred to the question as whether appellant had "breached" the requirements of the court's orders, while an unfortunate and confusing choice of terminology, is ultimately not controlling. The questions which the trial court submitted to the referee were clearly ones of fact: had appellant *in fact* disobeyed the Amended Order, and if so, was her disobedience necessitated or justified by the acts or omissions of the executor? In light of the complexity of the factual and procedural record, the trial court's reference of these questions was not error. (9 Witkin, Cal. Procedure, *supra*, Appeal, §§ 340-342, pp. 382-385.)

 To sum up: the trial court did not act in excess of its jurisdiction in setting aside the Amended Order. In its several orders expressly setting aside or annulling the Original Settlement Order and the Amended Order, and the parties' Original Settlement and Compromise Agreement, the court specifically stated it was free to distribute the estate without regard to the terms of those previous orders and agreements. We conclude on the basis of the entire record that these 1992 set-aside orders necessarily annulled the terms of the December 2, 1988, Order for Preliminary Distribution, and the court intended this result. As a result, that Order for Preliminary Distribution is no longer of any force or effect. The probate court was thus free to distribute the subject estate without reference to the terms of the parties' Compromise Agreement, Original Settlement Order, or the Amended Order and Order for Preliminary Distribution based thereon. Therefore, the court did not act in excess of its jurisdiction in making the orders from which appellant has appealed in this instance: namely, the orders approving the Fourth and Fifth Accounts and for delivery of the IRA, as well as the August 12, 1995, judgment approving and confirming the special referee's determination that appellant had concealed assets of the estate in the total value of $30,016.74, and ordering that her distributive share of the estate be reduced in that amount plus costs.

### III. SUFFICIENCY OF EVIDENCE TO SUPPORT ACCOUNTS

 Appellant argues that the court's orders approving the Fourth and Fifth Accounts awarded too much to the executor and his attorney and were based on inconsistent valuations of the assets of the estate. This argument is one of the sufficiency of the evidence to support the trial court's determination. The trial court was the trier of fact and the sole judge of the credibility of witnesses. We are not in a position to weigh any conflicts or disputes in the evidence. Even if different inferences can reasonably be drawn from the evidence, we may not substitute our own inferences or

deductions for those of the trial court. Our authority begins and ends with a determination of whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, which will support the judgment. (*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 697 [139 Cal.Rptr. 700, 566 P.2d 602]; *Estate of Teel* (1944) 25 Cal.2d 520, 526-527 [154 P.2d 384]; *Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; *Henry* v. *Sharma* (1984) 154 Cal.App.3d 665, 670 [201 Cal.Rptr. 478]; *Bowers* v. *Bernards* (1984) 150 Cal.App.3d 870, 873-874 [197 Cal.Rptr. 925]; *McKinney* v. *Kull* (1981) 118 Cal.App.3d 951, 955 [173 Cal.Rptr. 696]; 9 Witkin, Cal. Procedure, *supra*, Appeal, § 359, pp. 408-410.) Therefore, we must consider all of the evidence in the light most favorable to the prevailing party, giving that party the benefit of every reasonable inference from the evidence tending to establish the correctness of the trial court's decision, and resolving conflicts in support of the trial court's decision. (*Campbell* v. *Southern Pacific Co.* (1978) 22 Cal.3d 51, 60 [148 Cal.Rptr. 596, 583 P.2d 121]; *County of Mariposa* v. *Yosemite West Associates* (1988) 202 Cal.App.3d 791, 807 [248 Cal.Rptr. 778]; *Chodos* v. *Insurance Co. of North America* (1981) 126 Cal.App.3d 86, 97 [178 Cal.Rptr. 831]; *Rathburn* v. *Rathburn* (1956) 138 Cal.App.2d 568, 575 [292 P.2d 274]; 9 Witkin, Cal. Procedure, *supra*, Appeal, §§ 359-364, pp. 408-415.)

Appellant bears the burden of showing on appeal that the executor's evidence was demonstrably false, inherently improbable, or for some other reason incontestably of insufficient substantiality to support the trial court's orders approving the Fourth and Fifth Accounts. (9 Witkin, Cal. Procedure, *supra*, Appeal, § 367, pp. 416-417.) Appellant has failed to do so. ▮ To the contrary, the evidence in the record clearly supports the trial court's decision approving the Fourth and Fifth Accounts. The fees awarded the executor and his attorney, while higher than those awarded in the usual estate, are not surprising under the circumstances presented by this case, in which one party (appellant) has contested virtually every order of the probate court. The executor presented records to account for the requested fees, and these figures were considered by the trial court at the relevant hearings.

Appellant's attack on the valuation of estate assets is closely tied to her assertion that the terms of the Order for Preliminary Distribution are still in effect. However, as discussed, the trial court has repeatedly ordered that those terms are no longer valid, and that the estate may be distributed without any regard to the parties' Original Settlement. Not surprisingly, appellant's preferred valuations are those set in 1988 by the Compromise Agreement and the several orders based on that. These valuations have been superseded by subsequent events, including the court's orders setting aside

all previous rulings based on the parties' Original Settlement and Compromise Agreement.

## IV. Sufficiency of Evidence to Support Preliminary Distribution

 Lastly, appellant contends there is insufficient evidence in the record of the actual financial condition of the estate to support the probate court's most recent order, dated April 29, 1996, granting a petition pursuant to Probate Code section 11621, subdivision (a), for preliminary distribution of part of the estate to the Beard children. Appellant's central argument is that the Beard children's October 1995 petition for preliminary distribution misrepresented the solvency of the estate as of that date by relying on obsolete valuations set out three years earlier in the Fifth Account of July 1992. She furthermore urges that because of her appeal of the Fifth Account, "its operation and effect is stayed during the pendency of the appeal" and therefore cannot be considered as evidence in support of the grant of the petition for preliminary distribution under consideration in *this* companion (and now consolidated) appeal.

Appellant's contention is meritless. An appellate court will not overturn an order granting a preliminary distribution in the absence of an abuse of discretion by the probate court in evaluating the condition of the estate, and all presumptions will be exercised in favor of the correctness of the probate court's order. (*Estate of Parsons* (1925) 196 Cal. 294, 299-301 [237 P. 744]; *Estate of Fields* (1949) 94 Cal.App.2d 233, 236-238 [210 P.2d 247]; *Estate of Nuttle* (1934) 1 Cal.App.2d 678, 680-682 [37 P.2d 200]; *Estate of Dam* (1932) 126 Cal.App. 70, 78-79 [14 P.2d 162].) Under Probate Code section 1021, both a petition for a preliminary distribution and any objection or response to such a petition must be verified.[12] In this case, although the Beard children's petition for preliminary distribution was verified, appellant's objections to the petition were not.

The funds distributed by the order at issue did not represent the entire remainder of the estate. As set out in the verified petition, the money requested to be distributed consisted of refunds from the state and federal governments for overpayment of estate taxes. When these estate taxes were paid, they were charged to the Beard children as distributions to them because the taxes were being paid on their behalf. The receipt of the refunds for overpayment of these taxes, and their repayment to the Beard children, had no effect on the financial condition of the estate. Appellant has not

---

[12]Probate Code section 1021 provides in pertinent part: "(a) All of the following shall be verified:
"(1) A petition, report, or account filed pursuant to this code.
"(2) An objection or response filed pursuant to this code to a petition, report, or account."

contested the nature of the funds at issue, or the evidence in support of respondents' position.

The propriety of the probate court's grant of the petition for preliminary distribution of these funds is further supported by the court's decision to impose a bond requirement pursuant to Probate Code section 11622, subdivision (b), as specifically requested by appellant at the time. On the basis of the substantial evidence before it, the probate court concluded the estate was possessed of sufficient assets to make the requested distribution. The court's acquiescence in appellant's request for a bond provided additional security to insure that the distribution of the tax refunds to the Beard children could not possibly result in any loss or injury to appellant. (*Estate of Fields, supra,* 94 Cal.App.2d at pp. 236-238.)

We conclude the evidence in the record is sufficient to support the probate court's grant of the petition for preliminary distribution.

## V. DISPOSITION

The orders and judgment appealed from are affirmed in their entirety. Appellant shall pay respondents' costs on appeal.

Corrigan, J., and Walker, J., concurred.